[Civ. No. 35405. Second Dist., Div. Five. Aug. 11, 1971.]

JOSEPH DORSIC, Plaintiff and Appellant, v.
WALTER KURTIN, Defendant, Cross-defendant and Respondent;
RICHFIELD OIL CORPORATION,
Defendant, Cross-complainant and Appellant.

**COUNSEL**

Detrixhe & Laughlin and Frederick J. Lower, Jr., for Plaintiff and Appellant.

Veatch, Carlson, Dorsey & Quimby, Robert P. Dorsey and Henry F. Walker for Defendant, Cross-complainant and Appellant.

No appearance for Defendant, Cross-defendant and Respondent.

## OPINION

**STEPHENS, J.**—There are two appeals in the instant cause: one by plaintiff from the granting of defendants' motions for a new trial after judgment for plaintiff on his action for damages, and one by defendant Richfield from the verdicts for plaintiff and for cross-defendant Kurtin on Richfield's cross-complaint seeking indemnity.

The complaint alleged serious and permanent injuries to plaintiff as the result of negligence on the part of defendants, and the prayer sought substantial damages. The cross-complaint sought indemnity. The actions were tried to a jury. In the main action, a verdict was returned in favor of plaintiff and against both defendants in the sum of $32,000; on the cross-complaint, a verdict was returned in favor of cross-defendant Kurtin. Richfield moved for a new trial and judgment notwithstanding the verdict in both the main action and on the cross-complaint. The grounds urged for the new trial were: (1) irregularity in the proceedings; (2) orders of the court prevented a fair trial; (3) abuse of discretion by the court; (4) surprise; (5) excessive damages appearing to have been given under the influence of passion or prejudice; (6) insufficiency of the evidence; (7) verdict against the law; (8) errors in law.

A declaration was filed in support of the motions asserting irregularity in the proceedings because the service station lease, containing a clause relating to insurance, had been permitted to go to the jury. In addition, supportive points and authorities were submitted attacking the issue of liability and recovery, but not the fact of injury. Defendant Kurtin moved for a new trial in the main action, stating the grounds to be: (1) irregularity in the proceedings; (2) orders of the court prevented a fair trial; (3) abuse of discretion by the court; (4) surprise; (5) insufficiency of the evidence; (6) verdict against the law; (7) errors in law. The points and authorities submitted by Richfield were relied upon by Kurtin in support of his motion.

The court made its order granting both defendants' motions for a new trial in the main action on the grounds of (1) excessive damages and (2) insufficiency of the evidence to justify the verdict, unless within 10 days of the filing of the order the plaintiff filed a written consent to a reduction in the amount of the judgment to $13,000. Richfield's motion for a new

trial on the cross-complaint was denied.[1] Though Richfield's motion for judgment notwithstanding the verdict was not specifically ruled upon, the result was "deemed" a denial. (Code Civ. Proc., § 629.) Plaintiff Dorsic did not file a consent to a reduction of the amount of the judgment, and he now appeals from the order granting the new trial. Richfield filed its notice of appeal and cross-appeal from the judgment and the denial of the motion for judgment notwithstanding the verdict. Defendant Kurtin has not perfected an appeal, nor filed a brief on plaintiff's appeal.

The accident from which this lawsuit arose occurred on January 26, 1965, at the Richfield station located at the corner of Glendale Boulevard and Berkeley Street in the County of Los Angeles. The station was operated by defendant Kurtin, who had entered into a lease agreement, products agreement, and credit card regulation with defendant Richfield. The slipping and falling accident occurred in the repair work and hoist area, located in a large open room which was adjacent to the office of the station and some distance away from the gas-pump area of the station. The floor of the repair area was of concrete, dark in color, and sloped down toward a drain near the center of the floor. The fall took place in the immediate vicinity of the slope, and was blamed upon grease or other slippery substance being on the floor.

Plaintiff Dorsic established his injuries as being a "fracture simple, complete cervical neck left femur," and the injury necessitated surgery under general anesthetic. Supportive pins were placed in the bone of the leg to maintain alignment. Plaintiff was hospitalized for 23 days immediately following the injury, and shortly after his release it was necessary for him to be readmitted for further hospitalization for a period of 7 days. The evidence was that all of the hospitalization was necessitated by the one

---

[1]The order of the trial court reads:

"Both defendants' motion for a new trial is granted on the ground of excessive damages (C.C.P. 657, Subsection 5), and insufficiency of the evidence to justify the verdict (C.C.P. 657, Subsection 6) unless within 10 days from date of filing of this Order the plaintiff files with this Court his consent in writing to a reduction of the amount of the judgment to $13,000.00.

"The grounds upon which the Court grants the motion for a new trial is that after a careful consideration of all the evidence relating to the nature and extent of plaintiff's injuries, the nature, extent and duration of his disability, and the amount of special damages sustained by the plaintiff, the award of $32,000.00 is excessive and not supported by the evidence.

"It is the opinion of the Court that plaintiff's claim for damages was inherently improbable. The evidence in support thereof is subject to serious doubts as to its credibility. The nature and extent of plaintiff's injuries were not of such a degree of severity, nor his disability of such permanence as to justify an award of damages in excess of an aggregate sum of $13,000.00; and that the evidence will not justify a judgment in excess of that sum."

injury. After final release from the hospital, plaintiff was required to use crutches to avoid placing full weight on the leg. This circumstance continued for a year, and then he was required to use a cane for an additional six months. Following the surgery, the neck of the femur telescoped and the leg became some ⅝ of an inch shorter. The shortening of the leg caused the pin to push into the flesh, effecting pain and sleeplessness. It also necessitated that a 1½″ heel lift be worn by plaintiff. The pin was removed by further surgery about 34 months after the injury. The overall recovery left plaintiff with a limp and a pelvis rotation which is related to low back pain.

Plaintiff testified to loss of earnings[2] which resulted from the injury and disability, and established that as of the time of trial he was 56 years of age and that his physical condition was stationary. The total costs of ambulance, medical, and hospital services aggregated $3,285.10. We deem it unnecessary to further enlarge upon the facts, either as to the injury suffered, or the manner in which the accident occurred.

■ The contentions raised by plaintiff on appeal are: (1) the order granting the new trial constitutes a manifest and unmistakable abuse of discretion and therefore the order must be reversed; (2) if the order granting the new trial is affirmed by this court, the new trial must be limited to the issue of damages only; (3) the order granting the new trial did not comply with Code of Civil Procedure section 657, and therefore should be reversed.

Plaintiff's third contention was not contained in his original briefs. After filing of briefs by the parties, our Supreme Court decided the case of *Scala* v. *Jerry Witt & Sons, Inc.*, 3 Cal.3d 359 [90 Cal.Rptr. 592, 475 P.2d 864]. This case was discussed to a limited extent during oral argument. Our original, nonpublished decision was adverse to plaintiff's position. Plaintiff's subsequent petition for rehearing was granted and further oral argument was heard. In both the petition for rehearing and subsequent oral argument, the effect of the *Scala* case was more fully developed. *Scala* reemphasizes the requirements of *Mercer* v. *Perez*, 68 Cal.2d 104, 116 [65 Cal.Rptr. 315, 436 P.2d 315][3] which requires that the trial judge, in

---

[2]Plaintiff testified to receiving the following earnings prior to and subsequent to the accident:

| | |
|---|---|
| 1964 (earnings for year prior to accident) | $8,295.92 |
| 1965 (earnings up to time of accident Jan. 1-26) | 771.43 |
| (no earnings for the balance of the year) | |
| 1966 | 2,329.74 |
| 1967 | 4,636.72 |
| 1968 | 6,658.21 |

[3]*Scala* (at pp. 364-367) also resolves the conflict which developed after *Mercer* in decisions of the Courts of Appeal. Unfortunately, the trial judge did not have the

granting a new trial on insufficiency of the evidence, "must briefly recite the respects in which he finds the evidence to be legally inadequate" and that such an order "must briefly identify the portion of the record which convinces the judge 'that the court or jury clearly should have reached a different verdict or decision.' " *Scala* also requires that the specification of reasons must identify the deficiencies in terms of the evidence, record, or proof. Reiteration of the grounds for the ruling or phraseology in terms of issues or ultimate facts is insufficient to meet these requirements. As explained in both *Scala* and *Mercer,* one of the purposes for the requirement of a specification of reasons is to provide a record sufficiently precise to permit meaningful appellate review. In the instant case, the order of the trial court (in the first paragraph) clearly specifies the grounds, as required by statute, upon which the new trial was granted: "excessive damages (C.C.P. 657 Subsection 5)" and "insufficiency of evidence . . . (C.C.P. 657 Subsection 6)." The second paragraph of the order merely reiterates the grounds, and fails to provide an adequate specification of reasons for the trial court's decision. To simply rephrase the grounds of "excessive damages" and "insufficiency of the evidence" does not meet the requirements of specification. The third paragraph apparently is intended to provide the trial court's specification of reasons. Upon examination of these reasons, we are compelled to interpret them and to draw inferences in order to make them meaningful for purposes of review.[4] The first sentence of this paragraph states that the "claim for damages was inherently

---

same opportunity of reevaluating his decision; had he had that chance, we have no doubt but that the question caused by the ambiguity would have been laid to rest.

[4]The explanation of the trial judge can be rationalized by careful analysis, the indulgence in interpretation, and the making of an assumption. His reasons can be taken to be: (1) as to the ground of excessive damages: for the nature and extent of the injury and disability, assuming the jury saw these as I (the trial court) did, the award of $32,000 is excessive; (2) as to the ground of insufficiency of the evidence: if I (the trial court) assume that the jury had in mind the degree of injury and disability for which an award of $32,000 really would be fair and just, the substantial evidence does not establish that degree. For these explanations to be evaluated for legal sufficiency, it is necessary for a reviewing court to assume that the trial court saw the injury and resulting disability and special damages as they were asserted to be by plaintiff (fracture of neck of femur requiring surgery and pins; 30 days' hospitalization; removal of pins by further surgery; telescoping of femur causing ⅝″ shorter leg; crutches, one year; cane, six months; pain and sleeplessness; permanent limp; permanent pelvis rotation; permanent low back pain), because the trial court failed to explain what parts, if any, of the evidence relating to those items it considered insubstantial or inherently improbable. A reviewing court could then ask whether, as a matter of law, the trial court was not right (i.e., all reasonable minds would say that such injuries, disabilities, and expenses are worth more than $13,000 in damages.)

It is this intricate type of review-analysis based on artificial assumption with which the amendment to the code seeks to dispense.

improbable." The following sentence states that "the evidence in support thereof is subject to serious doubts as to its credibility." Were we to assume that these are the reasons the trial judge had to support the ground of insufficiency of the evidence, we immediately have a conflict with the court's order that the evidence did not justify a judgment in excess of $13,000. If the claim for damages "was inherently improbable"[5] and the evidence lacked credibility, there can be no justification for allowing any recovery. In the alternative, if we assume that the quoted words apply to the ground of excessive damages, we again have a conflict. The trial judge then, in essence, would be saying that what was related or described could not have occurred. There can be no doubt, at least, of the nature and major extent of plaintiff's injury and the fact that the slipping and falling accident occurred as described. We believe that the necessity for a reviewing court to draw inferences and resolve ambiguities is what was sought to be avoided by Code of Civil Procedure section 657 and the *Mercer* and *Scala* decisions. The trial court's order does not adequately specify its reasons, as required by statute, and does not allow meaningful appellate review. The "reasons" do not support the order, and the order must necessarily be reversed.

We now reach the contentions raised by defendant Richfield on appeal from the judgment: that the trial court erred in (1) refusing to instruct upon assumption of risk; (2) sending the lease to the jury room during deliberations when the lease contained a provision relating to insurance; (3) making extemporaneous statements to the jury during the giving of instructions; and (4) submitting to the jury the question of an agency relationship between the defendants. Richfield also appeals the adverse judgment on its cross-complaint, claiming that the court erred in not giving any instructions on the issue of indemnity.

Richfield's first contention is based on the court's refusal to give the jury an instruction on assumption of risk. The rule is clearly established that before the jury may be properly instructed on assumption of risk, there must be evidence that the plaintiff knew of danger and had actual knowledge of the specific danger involved. (*Grey* v. *Fibreboard Paper Products Co.*, 65 Cal.2d 240, 244 [53 Cal.Rptr. 545, 418 P.2d 153]; *Vierra* v. *Fifth Avenue Rental Service*, 60 Cal.2d 266, 274 [32

---

[5]"Inherently improbable" has been interpreted by our courts. In *People* v. *Lyons*, 47 Cal.2d 311, 320 [303 P.2d 329], the court stated that "[T]o warrant the rejection of the statements [on grounds of inherent improbability] given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions." In *People* v. *Hunter*, 158 Cal.App.2d 500, 504-505 [322 P.2d 942], the court stated: " 'Testimony is not inherently improbable unless it appears that what was related or described could not have occurred. . . .' "

Cal.Rptr. 193, 383 P.2d 777].) Richfield contends that plaintiff had the requisite actual knowledge of the risk here involved. This knowledge need not be established by direct evidence; it is sufficient to show facts such as opportunity to observe, experience, and warning by another, which would warrant a jury's finding of inference of knowledge. (*Grey* v. *Fibreboard Paper Products Co., supra;* see also *Morton* v. *California Sports Car Club,* 163 Cal.App.2d 685, 688 [329 P.2d 967]; *Gallegos* v. *Nash, San Francisco,* 137 Cal.App.2d 14, 19 [289 P.2d 835].) Richfield asserts that inference of knowledge is shown by the fact that Dorsic was an experienced mechanic; that he had been around this specific workroom hundreds of times before the accident; and that he knew that grease and oil would drip and be around the whole of such work area. We believe that these factors would sustain an inference of general knowledge that he was in a place of danger, but not an inference that he had actual knowledge of the specific danger involved. Automobile repair areas are well known for having grease and oil on the floors and therefore being slippery, but the added hazard of a slightly sloping floor[6] commencing some three feet from the drain is not necessarily an item of general knowledge. There was no showing made that Dorsic was actually aware of the slope, or that an inference of his knowledge of the slope was justified. There were no signs in the area, nor were there any identifying marks in the area. The mere fact that Dorsic was present in the work area many times before does not necessitate an inference of knowledge of such a subtle detail as the ½″ per foot slope. As hereinbefore stated, before the jury may be instructed on assumption of risk, the defendant has the burden of producing evidence of (1) the plaintiff's knowledge that he was stepping into a place of danger *and* (2) that he had actual knowledge of the *specific danger involved.* Richfield only carried its burden as to the first requirement, and therefore the trial court properly refused to instruct on assumption of risk.

 Richfield's second contention arises from the fact that during the course of the trial, all counsel stipulated that the lease would not go to the jury, although it was admitted into evidence. After the jury started to deliberate, it requested that certain portions of the lease be read. After consulting with the trial judge, the clerk of the court sent the lease to the jury room. Richfield contends that since the lease contains reference to liability insurance,[7] its submission to the jury is contrary to the provisions

---

[6]The testimony revealed that the station workroom area had a drain on the left side, with a slight slope going to the drain, the slope starting about 3 feet from the drain, with a downward slope of 1½ or 2 inches.

[7]The lease clause in question provides: "Lessee further agrees to procure and to maintain in full force and effect at his sole cost during the term or any extension

of Evidence Code section 1155[8] and therefore prejudicial error. We do not agree. The Law Revision Commission comment states: "Section 1155 codifies existing law. *Roche* v. *Llewellyn Iron Works Co.*, 140 Cal. 563, 74 Pac. 147 (1903). Evidence of liability insurance might be inadmissible in the absence of Section 1155 because it is not relevant; Section 1155 assures its inadmissibility." We do not disagree with the fact that it was error for the trial court to send the lease to the jury with the liability insurance clause intact in the lease; we only disagree with the fact that it was prejudicial error which requires reversal. ■ Determination of whether the defendant received a fair trial or was prejudiced by the admission of evidence of liability insurance depends upon the facts and circumstances involved in each case. In *Roche, supra,* the fact that defendant was insured was disclosed by plaintiff's counsel upon cross-examination of the president of the defendant company. In the subsequent cases[9] the fact of insurance has generally been brought to the jury's attention by some conduct of counsel, by direct examination, cross-examination, argument to the jury, or upon *voir dire* of prospective jurors. In each case the fact of insurance was clearly brought to the attention of the jury. ■ In the instant case, there was no misconduct by counsel, and there is no indication that the jury took note of the insurance provision. However, we must assume that the jury read the insurance provision in the lease and considered it in its verdict; also, that the jury inferred from the lease requirement that the lessee carried insurance, even though he, in fact, did not have such coverage at the time of the accident.[10] ■ The burden of showing prejudice, however, remains upon the party claiming it. (*Vaughn* v. *Jonas,* 31 Cal.2d 586, 601 [191 P.2d 432]; *People* v. *Corral,* 224 Cal. App.2d 300, 307 [36 Cal.Rptr. 591]; *Conner* v. *Rose,* 219 Cal.App.2d 327, 329 [32 Cal.Rptr. 919]; *Marc Bellaire, Inc.* v. *Fleischman,* 185 Cal. App.2d 591, 596 [8 Cal.Rptr. 650].) ■ Defendant Richfield has not met this burden, and its contention of prejudicial error fails.

■ Richfield's next contention is that the trial judge erred in making the following extemporaneous statements to the jury during the reading of instructions: "Let me clarify this instruction. The Court instructs you

hereof, Bodily Injury Liability Insurance with limits of at least $50,000.00 for injury to or death of a person or persons in any one accident, and Property Damage Liability with limits of at least $25,000.00 in any one accident."

[8]Evidence Code section 1155 provides: "Evidence that a party was, at the time a harm was suffered by another, insured wholly or partially against loss arising from liability for that harm is inadmissible to prove negligence or other wrongdoing."

[9]See A.L.R. annotation, 4 A.L.R.2d 761; see also 21 Southern California Law Review 227.

[10]Defendant Kurtin actually did not carry insurance, as required by the lease. This was disclosed by Kurtin's counsel, outside the presence of the jury, during a conference with the trial judge.

as a matter of law that there is no question that the plaintiff did suffer injuries, and there is no question that if you find negligence on the part of the defendants that that negligence was the proximate cause of the injury because plaintiff received injuries from this fall. However, the important thing for you to determine, as these instructions indicate, is whether there was any negligence on the part of the plaintiff. If you find that plaintiff was negligent, whether there is any negligence on the part of the defendant — excuse me — if you find there was negligence on the part of defendants or either of them and the plaintiff was not contributorily negligent, then of course you find for the plaintiff. If you find that defendants were negligent and the plaintiff was contributorily negligent, then you must find for the defendants, is that clear?" (Whereupon the Court continued reading the instructions, which were reported but not transcribed.) Richfield focuses on each portion of the extemporaneous statement and attacks each individually. ■ Instructions must be considered in their entirety, and if taken as a whole, they state the law of the case fairly and clearly; in toto, they are unobjectionable, even though isolated passages from single instructions may be subject to some objection. (*Douglas* v. *Southern Pacific Co.,* 203 Cal. 390, 396 [264 P. 237]; see also *Gordon* v. *Aztec Brewing Co.,* 33 Cal.2d 514, 519 [203 P.2d 522]; *Wells* v. *Lloyd,* 21 Cal.2d 452, 458 [132 P.2d 471]; *Lerner* v. *Glickfeld,* 187 Cal.App.2d 514, 523 [9 Cal.Rptr. 686].) ■ When the instructions in this case are considered in this light, including the instruction given at Richfield's request,[11] they adequately state the law of the case fairly and clearly and are unobjectionable.

■ Richfield's fourth contention is that it was error to submit to the jury for their determination the question of whether defendant Kurtin was an agent of Richfield.[12] ■ The question of whether there exists an

___

[11]The instruction was: "If in these instructions any rule, direction or idea has been stated in varying ways, no emphasis thereon is intended by [the judge] and none must be inferred by you. For that reason you are not to single out any certain sentence or any individual point or instruction and ignore the others, but you are to consider all the instructions as a whole and to regard each in the light of the others. The order in which the instructions are given has no significance as to their relative importance."

[12]The disputed instructions were as follows:

"An agency is actual or ostensible."

"Although there are two defendants in this action, one of them, Richfield Oil Corporation, has been sued on the theory that it was a principal for whom the other defendant was acting as agent or employee within the scope of his authority, at the time of the events out of which the accident occurred.

"If you find that Walter Kurtin is not liable, then the principal is not liable unless the principal was itself negligent, or you find ostensible agency. But if you find that Walter Kurtin is liable, you must then decide whether, at the time he incurred such liability he was acting as agent for the Richfield Oil Corporation and within the scope of his authority.

"One is the agent of another person at a given time if he is authorized and agrees

agency relationship is one of fact (*Burr* v. *Capital Reserve Corp.*, 71 Cal.2d 983, 995 [80 Cal.Rptr. 345, 458 P.2d 185]; *Nichols* v. *Arthur Murray, Inc.*, 248 Cal.App.2d 610, 614 [56 Cal.Rptr. 728]; *Housewright* v. *Pacific Far East Line, Inc.*, 229 Cal.App.2d 259, 265 [40 Cal.Rptr. 208]), and for the jury to decide unless the evidence is susceptible of but a single inference. (*Seneris* v. *Haas*, 45 Cal.2d 811, 831 [291 P.2d 915, 53 A.L.R.2d 124].) ██ An independent contractor is one who renders service in the course of independent employment or occupation following his employer's desires only as to the results of the work, not as to the means whereby it is to be accomplished. (*McDonald* v. *Shell Oil Co.*, 44 Cal.2d 785, 788 [285 P.2d 902]; *Housewright* v. *Pacific Far East Line, Inc., supra,* at p. 266.) ██ One of the major factors of an agency relationship, as distinguished from that of an independent contractor, is the right to control the manner and means of accomplishing the result desired. (*Housewright* v. *Pacific Far East Line, Inc., supra.*) ██ The giving of instructions on agency is proper when there is some evidence from which a jury could infer an agency relationship. ██ In the instant case, Richfield was interested in the sale of gasoline and its other products as the result to be achieved by defendant Kurtin. A clear means of achieving those results was to control the hours that Kurtin was open for business. The lease provided that Kurtin was to remain open seven days a week, fifteen hours a day for six days (from 7 a.m. to 10 p.m.) and thirteen hours on Sunday (from 8 a.m. to 9 p.m.). This is strong evidence of Richfield's right to control. In addition, Richfield assumed the responsibility for all but minor repairs to the equipment. Kurtin was also barred from displaying any sign not related to the conduct of the business. The rental provided in the lease was a fixed rate applicable to the gallonage delivered to the station, plus a fixed sum for each day of the term that Kurtin failed to keep the premises open for business and properly illuminated during the hours specified in the lease. The lease was subject to termination without notice or demand if the station was closed for business for a period of 48 successive hours

to act for or in place of such person and is subject to that person's control in the duty being performed. One may be an agent although he receives no payment for his services. For the purposes of this trial, the term, agent, includes servants and employees."

"It is not necessary that a particular act or failure to act be expressly authorized by the principal to bring it within the scope of the agent's authority. Such conduct is within the scope of his authority if it occurs while the agent is engaged in the duties which he was employed to perform and relates to those duties. Conduct for the benefit of the principal which is incidental to, customarily connected with, or reasonably necessary for the performance of an authorized act is within the scope of the agent's authority."

"The defendant, Richfield Oil Corporation, is a corporation and as such can act only through its officers and employees, who are its agents. The acts and omissions of an agent done within the scope of his authority are, in contemplation of law, the acts and omissions respectively of the corporation whose agent he is."

or on a refusal to "diligently sell motor vehicle fuels therefrom for said period of time." The gallonage rental rate was to be reduced by ¼ ¢ per gallon as a restroom allowance, but that allowance could be suspended if, in Richfield's "exclusive determination the restrooms were not kept in a neat and clean condition and furnished with adequate restroom supplies." There was also testimony by an employee of ' Kurtin that Mr. Young, a Richfield supervisor, would come around about once a week and was very "pesty," looking all around. This supervisor directed the employee to move a tire, and also wanted tools picked up and things out of the way. The employee did what the Richfield supervisor told him to do. We believe that this evidence was sufficient to submit the issue of agency to the jury.

 Turning to Richfield's appeal from the judgment rendered upon its cross-complaint, we note that cross-defendant Kurtin has not filed a brief. In this portion of the cause before us, Richfield's sole claim of error is that the trial court gave no instruction whatever upon the issue of indemnity. As aptly pointed out by plaintiff, two instructions were given at the request of Richfield concerning the issue raised by the cross-complaint. If additional instructions on any matter included therein had been desired by Richfield, the duty fell upon it to request applicable instructions covering these principles of law. Certainly, the trial court was under no duty to do the job of Richfield's attorneys. We see no reason to vary from the rule expressed in *Switzer* v. *State of California,* 269 Cal.App.2d 627, 636 [75 Cal.Rptr. 371]: " 'In order to complain of failure to instruct on a particular issue the aggrieved party must request the *specific proper instruction.* . . . Similarly, if the court gives an instruction correct in law, but the party complains that it is too general, lacks clarity, or is incomplete, he must request the *additional or qualifying instruction* in order to have the error reviewed.' " (Quoting from 2 Witkin, Cal. Procedure (1954) Trial, § 52, p. 1780.)

The judgment on the cross-complaint is affirmed, the order granting a new trial is reversed, and the judgment rendered by the jury is reinstated as the judgment and affirmed in its entirety. Defendant Richfield to pay costs.

Kaus, P. J., and Reppy, J., concurred.

A petition for a rehearing was denied August 27, 1971.