[Civ. No. 28615. Fourth Dist., Div. One. Apr. 11, 1984.]

DANA LEE BIGBOY, Plaintiff and Appellant, v.
COUNTY OF SAN DIEGO, Defendant and Appellant.

398

COUNSEL

Brian D. Monaghan, Louis E. Goebel, Cheryl Shensa and Goebel & Monaghan for Plaintiff and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Howard P. Brody, Chief Deputy County Counsel, Charles A. Viviano and Thomas Lundmark, Deputy County Counsel, for Defendant and Appellant.

OPINION

**STANIFORTH, J.**—This appeal concerns statutory limits on the trial judge's discretion to issue a conditional new trial order based on his personal opinion the damages were excessive.

### FACTS

Dana Lee Bigboy, age 17, was rendered a paraplegic when the car in which he was a passenger skidded off the outside of a curve and down a steep embankment. A lawsuit was filed naming the County of San Diego (County) and the driver of the car as defendants. After trial lasting over one month, a mistrial was declared because the jury could not reach a verdict on the liability of the driver. In the second trial the issue of the driver's liability was severed and the trial proceeded on the issue of the County's liability.

The County owned and maintained the road. Its liability was clear. The curve was known to be dangerous. In the four years before this accident at least fifteen accidents had occurred at the same location. Thirteen of those accidents were from the same lane, seven at night, and of the nine injuries involved, one was a fatality. In the earlier lawsuit the County engineer had been deposed and testified to elements which would make the County aware

of the location and the dangerousness of the condition of this public highway.

The County's traffic engineer classified the accident as "correctable" had signs warned of the decreasing radius curve and the appropriate speed limit. The County had issued a work order to install signs at this location over a year before the accident, but no action had been taken. The work order had "slipped through the cracks." The cost for correcting the dangerous condition by posting a warning sign would have been less than $200.

When Bigboy was thrown from the car his back was broken and he suffered permanent massive injuries. Medical testimony showed the extent of his disability and his pain and suffering since the accident and for the next 51 years, his life expectancy at the time of trial; Bigboy will never have sensory or motor functioning below his ribcage; he will suffer phantom pain, muscle spasms and sterility for the rest of his life. According to statistics he is unemployable. Bigboy described his pain and suffering after the surgery and during recovery. He was in extreme physical pain which has not subsided. Doctors expect this pain will not go away; he was on the brink of suicide; he talked to a minister for counseling. He felt left out and "stared at." Before Bigboy's accident he was very active; he ran two miles a day, was a weight lifter, played soccer, body surfed, and hiked. On the day of the accident he had begun parachute jump training and made his first jump. His ambition in life was to become an 18-wheel truck driver.

## THE TRIAL

After hearing the testimony of some 42 witnesses, reviewing approximately 114 exhibits and participating in a nearly month-long trial, the jury awarded Bigboy $2.25 million for past and future medical expenses, lost earnings and pain and suffering. The trial court's denial of the County's motion for new trial was made conditional upon Bigboy's acceptance of a remittitur of the jury award from $2.25 million to $1.75 million. Bigboy rejected the remittitur of the verdict; an order for new trial followed.

The trial court in its written statement of reasons for this order said: "As announced orally at the time of the hearing on the motion for new trial, the Court is of the opinion that the award of damages is excessive when compared with awards in similar cases. It is also the opinion of the Court that all of the needs of plaintiff will be adequately provided for if the plaintiff received an award in the vicinity of one million dollars. The Court believes that the excessive verdict was the result of the defendant County's effort to defend the indefensible, combined with the [sic] fact that the plaintiff had

an unusual appeal and would naturally evoke great sympathy from any normal human being."

The judge issued this order in face of a previous declaration: "I really don't think that there was anything that occurred in the trial that was prejudicial." He found the evidence supporting the verdict was well substantiated. He said "[T]he evidence would have supported a much smaller verdict; the evidence would have supported a larger verdict, depending upon who you believed." The court continued: "The evidence supports [the verdict]. The evidence supported [a] smaller verdict. . . . [¶] There is in almost every case in which a new trial is granted. . . . [T]here's evidence to support, according to your figures, 4,485,330 . . . [¶] Plus pain and suffering." And with that the judge issued his remittitur of $500,000 reducing the judgment to $1.75 million; he further reduced costs by $8,000 stating an expert's fee of $16,000 was simply too high.

DISCUSSION

I

■ Section 657 of the Code of Civil Procedure provides: "7. . . . When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated.

". . . . . . . . . . . . . . . . . . . . . . .

"(b) on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, *it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons.*" (Italics added.)

The statute requires the reasons for the new trial appear in the record. There are sound policies for this requirement as expressed by the Supreme Court in *Mercer* v. *Perez* (1968) 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315]: "Two purposes are served by the present requirement of specification of reasons, and both are related to the traditionally broad powers expressed by the trial judge in passing on a motion for a new trial. Such a motion is addressed to the judge's sound discretion. . . .

". . . Society has a manifest interest in avoiding needless retrials: they cause hardship to the litigants, delay the administration of justice, and result in social and economic waste. [Citation.] Accordingly, one of the functions

of the requirement of specification of reasons is to promote judicial deliberation before judicial action, and thereby 'discourage hasty or ill-considered orders for new trial.' [Citation.] . . .

"The second purpose of this requirement is to make the right to appeal from the order more meaningful. . . . [I]t must be recognized that under the prior law an appellant challenging an order granting a new trial tended to have great difficulty in presenting his case. [Where the notice of motion was predicated on all or most of the statutory grounds], the appellant was left in the dark as to which aspect of the trial to defend, and quite understandably struck out blindly in several directions at once. . . . [T]he reviewing court [remained] equally uninformed of the basis on which the trial judge acted. . . .

"[When appeal was taken from a new trial order based on insufficiency of the evidence to justify the verdict,] [t]he scope of review thus encompassed the entire body of testimony and exhibits introduced at the trial. The appellate court could find itself considering alleged insufficiencies totally unrelated to those relied upon by the trial judge; and without further elucidation of the order, the principle that an abuse of discretion cannot be found in cases in which the evidence is in conflict and a different result could have been reached [citation], 'constitutes an iron curtain, cutting off any adequate review of whether or not there was *any* reason for the trial judge to set aside the verdict of the jury and grant a new trial.' (Italics added.) [Citation.]" (*Id.*, at pp. 112-114; fn. omitted.)

Several cases have discussed what reasons are sufficient under the statute. It is helpful if the court declares what witnesses it believed, what testimony was to be disregarded or the value of any impeachment. (See *Dizon* v. *Pope* (1974) 44 Cal.App.3d 146, 149 [118 Cal.Rptr. 465].) The court should set forth how it arrives at a lower figure. (*Ibid.*) The court should briefly identify criticized evidence. (*Aronowicz* v. *Nalley's, Inc.* (1972) 30 Cal.App.3d 27, 39 [106 Cal.Rptr. 424].) A general statement one figure is too high and another figure too low is insufficient. (*McLaughlin* v. *City etc. of San Francisco* (1968) 264 Cal.App.2d 310 [70 Cal.Rptr. 782].)

If we compare the statement of reasons in this case to the statement of reasons found adequate in other cases we find this statement is insufficient. In *Thompson* v. *John Strona & Sons* (1970) 5 Cal.App.3d 705 [85 Cal.Rptr. 350], the court said: "[T]he trial court properly considered the special damages sustained, noted that the medical expenses only amounted to $432.50, determined that plaintiff had incurred no significant loss of wages from the date of injury to the date of trial, and concluded that plaintiff was not likely to suffer any future loss of earnings as a result of the injury, and would not

incur any further medical expense. In view of the conflict in the evidence as to the nature, cause, and extent of plaintiff's injuries [citation], and inasmuch as the special damages were relatively nominal in amount, it cannot be said as a matter of law the trial court abused its discretion in determining that the $24,567.50 award of general damages was excessive and unsupported by substantial evidence." (*Id.*, at p. 712.)

In *Sanchez* v. *Hasencamp* (1980) 107 Cal.App.3d 935, 938 [166 Cal.Rptr. 118], liability was established and the new trial order affirmed. The new trial order described what part of the verdict was inadequate in light of the testimony of the plaintiff, her doctors and experts.

In *Jones* v. *Citrus Motors Ontario, Inc.* (1973) 8 Cal.3d 706 [106 Cal.Rptr. 28, 505 P.2d 220], the trial court order recited specific evidence supporting its conclusion the jury was "'misled into an area of speculation not supported by the evidence," and summarized the strength of plaintiff's evidence and the weakness of defendant's evidence. (*Id.*, at p. 710.) **(2)** Although the court is entitled to disbelieve or discount certain evidence in considering a motion for new trial, the statute requires a brief statement of this process in the record. (*Id.*, at p. 711.)

In *Handelman* v. *Victor Equipment Co.* (1971) 21 Cal.App.3d 902 [99 Cal.Rptr. 90], the court affirmed the new trial order because the evidence lacked sufficient probative value to support the verdict. The order analyzed the evidence and concluded although the plaintiff proved psychological damage from the injury caused by a faulty mixture of helium and oxygen while deepsea diving, he did not prove this had any effect on his earning potential. There was no evidence of lost earning capacity, and the evidence showed he was capable of making deepsea dives when necessary after the injury. The judge declared, based on evidence the plaintiff had been earning and was capable of earning as much money after the incident as before, the jury's verdict of the lost earning capacity was a matter of speculation.

■ Each of these cases specifically directs the appellate court's attention to some aspect of the record which would have misled or prejudiced the jury and which convinces the trial judge the jury clearly should have reached a different decision. Otherwise there is no reason to disturb the factual question of compensation, a matter long within the exclusive province of the jury. (*Seffert* v. *Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 506 [15 Cal.Rptr. 161, 364 P.2d 337].)

■ In sum, the appeal from an order granting a new trial depends upon the sufficiency of the reasons specified by the trial court. Whether these reasons are sufficient depends in turn upon whether there is a substantial

basis in the record for the trial judge's decision. (*Scalla* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 363 [90 Cal.Rptr. 592, 475 P.2d 864]; *Stevens* v. *Parke, Davis & Co.* (1973) 9 Cal.3d 51, 60 [107 Cal.Rptr. 45, 507 P.2d 653, 94 A.L.R.3d 1059].)

## II

█  Here, it is a futile effort to search the judge's statement of reasons for granting a new trial for any reference to any portion of the evidence that would explain a lesser verdict or which would guide an appellate court in determining whether the "jury clearly should have reached a different verdict." The judge articulated only three reasons; the statute directs it be "conclusively presumed" these are the only reasons for the new trial order. None of these reasons is sufficient.

The court first declares this verdict exceeds the awards given in similar cases. This conclusion is based on the trial judge's personal experience and considering awards in other courts for other plaintiffs.[1]

█  Clearly evidence of the range of awards in other cases would not have been proper for the jury's consideration: "The vast variety of and disparity between awards in other cases demonstrate that injuries can seldom be measured on the same scale. The measure of damages suffered is a factual question and as such is a subject particularly within the province of the trier of fact. For a reviewing court to upset a jury's factual determination on the basis of what other juries awarded to other plaintiffs for other injuries in other cases based upon different evidence would constitute a serious invasion into the realm of fact finding." (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 65, fn. 12 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].)  █  The judge is not permitted to substitute his judgment for that of the jury on the question of damages unless it appears from the record the jury verdict was improper. For example, in *Dizon* v. *Pope, supra,* 44 Cal.App.3d 146, 147-148, the statement of reasons was insufficient where the judge substituted his judgment as to the nature of the injury.[2] In *Dorsic* v. *Kurtin* (1971) 19 Cal.App.3d 226, 231 [96 Cal.Rptr. 528], the

---

[1]The court said during a discussion of what "clearly should have arrived at a different verdict" meant: "It means different things to different people. The way I can see is that, you know, I've had 37 years of experience in personal injury cases and I've seen everything. This doesn't shock me, you know. . . . [¶] I can't see how a judge can exercise any standard except the standard of what—of his range."

[2]The new trial order read: "The motion for new trial will be granted on the grounds that the verdict is excessive. The plaintiff sustained special damages of $1536.00. The injury was to soft tissue and does not appear to be permanent. . . ."

court declared the damages inherently improbable in disagreeing with the jury's conclusion as to the severity and permanence of the injury.[3]

We conclude the trial judge's personal opinion based on the ranges of awards in other cases does not show the jury should have clearly reached a different verdict in this case and is therefore an irrelevant consideration, not a lawful basis, for granting the new trial order and issuing the remittitur.

### III

The conjoined reasons that (a) the County's position was indefensible and (b) Bigboy was a very attractive client are also insufficient. As a matter of policy the plaintiff should not suffer because, although liability was clear, the defendant chose to defend the indefensible through "terrible tunnel vision." It is the defendant's choice and right to defend. Here the County had notice of many accidents because of a dangerous condition for which it was responsible, had issued a work order approximately one year before the time of the accident, and could have posted a warning sign for about $200. The damages sustained by Bigboy were not diminished or increased one farthing because the County chose to defend this posture. Unless the defendant's conduct so impassioned and prejudiced the jury as to make the verdict unjust, the verdict should not be set aside for this reason. There is nothing in the record disclosed by research, nor does the County direct us to any fact which would support a conclusion the County's grossly indefensible conduct caused the jury to award *excessive* damages.

This conclusion is warranted based on the record as a whole and on the rational inference which may be drawn from the fact the jury did not award the full amount of the prayer or the highest award which could have been supported by the evidence.

Concerning the judge's remarks about Bigboy personally, it was not the jury's shock at his physical condition or disfiguration that concerned the judge. It was Bigboy's sheer likeableness. Not one case nor any authority

---

[3]The new trial order read: " 'The grounds upon which the Court grants the motion for a new trial is that after a careful consideration of all the evidence relating to the nature and extent of plaintiff's injuries, the nature, extent and duration of his disability, and the amount of special damages sustained by the plaintiff, the award of $32,000.00 is excessive and not supported by the evidence.

" 'It is the opinion of the Court that plaintiff's claim for damages was inherently improbable. The evidence in support thereof is subject to serious doubts as to its credibility. The nature and extent of plaintiff's injuries were not of such a degree of severity, nor his disability of such permanence as to justify an award of damages in excess of an aggregate sum of $13,000.00; and that the evidence will not justify a judgment in excess of that sum.' " (*Dorsic* v. *Kurtin, supra,* 19 Cal.App.3d at p. 231.)

can be found for the proposition a plaintiff's charm or attractiveness could impermissibly prejudice a jury. To hold otherwise would require plaintiffs to risk adverse orders or lose their day in court because their personal qualities might affect the jury's deliberations. The jury's decision is not to be based on sympathy; yet the jury cannot immunize itself from compassion. A reasonable factual inference to be drawn from Bigboy's personal qualities is that had he not been rendered paraplegic, he would have had a full, rigorous, and rewarding life. The quality of his life is unavoidably affected by the injury caused by the County's conduct. Without citation to some portion of the record showing the jury's verdict was based on emotionalism, sympathy or the desire to punish the County, Bigboy's personal qualities are relevant considerations. He had a right to be in court.

The statement of reasons required by Code of Civil Procedure section 657 are insufficient as a matter of law and fact; therefore the jury verdict must be reinstated and judgment entered accordingly unless the issues raised by the County in its cross-appeal require reversal of the judgment in part or in whole.

## IV

On its cross-appeal, the County argues the verdict should be remitted to the sum of $1 million.

Defense experts testified to damages of:
| | |
|---|---|
| Past Medical Expenses | $ 67,330.81 |
| Future Medical Expenses | $266,373.00 |
| Loss of Earning Potential | $239,087.00 |
| Total | $572,790.81 |

Plaintiff's experts testified to damages of:
| | | |
|---|---|---|
| Past medical expenses | $ 67,330.81 | $ 67,330.81 |
| Loss of earning potential (Truckdriver) | $ 735,989.00 - | $1,354,040.00 |
| Future medical expenses | $1,343,030.00 - | $1,773,220.00 |
| Total | $2,146,349.81 - | $3,194,590.81 |

Loss of time: 1,163 hours per year

In its motion for new trial the County argued evidentiary questions on the liability issue in an attempt to direct attention towards the driver and away

from its own negligence. The only damages the County attempted to seriously challenge concerned Bigboy's earning potential.

Evidence supporting the jury verdict is substantial. Concerning loss of future earnings, Bigboy's expert's opinion of both the high and low estimate are supported by a mass of data. The defense experts sought to use a different method of calculation for loss of future earnings—"a stream of flow of income" approach and different assumptions as to Bigboy's job prospects. The jury was presented with the various hypothetical "assumptions" made by the respective experts. The evidence—believable—before the jury would have supported a higher award, as the trial judge noted.[4] Substantial evidence supports the choice made by the jury.

The jury heard testimony of the costs of a minimal health maintenance level, defined as what costs a welfare agency would reimburse, and described by the trial court as those costs absolutely necessary to live. Virtually uncontradicted evidence showed $1.77 million would be necessary to provide minimum home care and medical expenses not including psychological care costs even though Bigboy's condition would magnify "normal life crisis."[5] This testimony was provided by a nurse expert in determining costs, confirmed by the head of the rehabilitation unit and reviewed by the physician responsible for Bigboy's home care program. All of these witnesses were properly credentialed and had extensive personal knowledge of Bigboy's case.

The only defense evidence which might have contradicted these costs was presented by a doctor who had never examined Bigboy and had only reviewed some of the medical records but not in great detail. Although this doctor stated the figures seemed high, he admitted he normally did not handle cost calculations as part of his work. Although there was ample evidence to support a much higher verdict based on an optimal health care program created to give Bigboy a quality of life more nearly approaching what he would have had without the injury (described by the trial court as what was desirable to make life more interesting), the jury verdict was far less than this amount. There is no cause to reverse the jury's verdict.

---

[4]The trial judge stated evidence was offered which could have supported an award over $4 million. The "more comfortable" level of health care was not extravagant. It included such things as an extra wheelchair for use when the original wheelchair was in the shop for repairs, otherwise, Bigboy would be bedridden during the time it would take to get parts and perform the labor. Such other things as an extra cushion to be used in his chair if the cushion was soiled due to a bowel or bladder disfunction and to enable him to have a set of supplies to accommodate himself in standard bathrooms, a portable wheelchair ramp so he would have access to otherwise inaccessible places such as homes and businesses, etc. were also included in this category.

[5]The projections did not account for increased care needed due to a serious injury or illness or family crisis such as death or divorce or unemployment.

V

The County next argues the judgment should be reversed because Big-boy's counsel committed prejudicial misconduct. These arguments were submitted to the trial judge in the County's motion for new trial. The trial judge specifically found none of these charges were well founded.

■ Four specific instances are cited. The first concerns questioning during voir dire. Bigboy's counsel told the trial court and the County's counsel in an *in limine* motion he intended to voir dire jurors concerning the source of money for the judgment including whether any juror had an interest in an insurance company. The County did not object and the court did not rule whether this questioning was permissible. During voir dire Bigboy's counsel made one inquiry of this nature. The trial court admonished the jury the County was not insured and insurance coverage was not a relevant factor in the trial. The trial court correctly determined the admonishment cured any potential prejudice coming from this question. In any event the possible prejudice created by reference to insurance coverage is that the jury will give a larger award than necessary based on the "deep pocket" theory. In this case the jury as taxpayers would not be as likely to unfairly inflate the damage award as the County does not offer this same "deep pocket" opportunity.

■ The second instance of misconduct cited concerns a motion granted *in limine* to limit evidence of some 69 earlier accidents at this curve to 15 accidents. From the record it appears the reference to 54 prior accidents by Bigboy's expert was a gratuitous comment in response to a question on a related but different topic.[6]

In order to minimize of the effect of this slip of the tongue the court warned counsel, refused a bench conference and directed counsel to go on. Counsel then continued in a different vein. After the jury withdrew, the court permitted county counsel to enter a motion for mistrial on the record. The court denied the motion, observing the witness had volunteered this statement and although it was unfortunate it was not prejudicial. The 54 accidents in addition to the 15 accidents the court permitted to be proven were

---

[6]The context in which the question appeared was a discussion over the effect of alcohol on drivers attempting to negotiate the curve. The question was:
"Q. With respect to the whole road, of how many within that four-year period involved the driver categorized as 'B,' driving under the influence;
"A. I think there were 54 accidents on this entire list, and there were only two with a 'B' category during that period of time, 1974 through 78."
Had the witness confined his answer to respond to the question the answer would have been two drivers. Counsel was not treading on impermissible territory had the answer been responsive.

cumulative and not unduly prejudicial in view of the overwhelming evidence of the County's liability. An admonishment would only have called attention and overemphasized the importance of this comment.

■ The County next argues Bigboy's counsel attempted to introduce evidence that personal injury awards are taxable. This contention is not supported by fact. During cross-examination of the County's economist, Bigboy's counsel asked whether the economist's calculations considered the income tax consequences of receiving interest payments. County counsel's objection was sustained and *the court* told the jury that money the jury may award is not subject to income tax but income from that money is subject to income tax. Counsel's question was concerned with the income tax consequences of the interest earned on a possible award. This question was proper and the court's explanation clarified any ambiguity.

The County's fourth complaint concerns a finding by the trial judge Bigboy's counsel committed misconduct in asking a question.[7]

This single question, assuming arguendo it was misconduct, is not prejudicial: Juries are instructed questions are not evidence and the court here sustained the objection before the question was answered.[8] Reference to this fatality had seeped into the case during opening argument and throughout the trial. The trial judge also observed the jury on more than one occasion had before it the fact there had been a fatality. The trial judge correctly found the asserted misconduct was not prejudicial.

■ County argues even if none of these instances are sufficient grounds for reversal alone they constitute cumulative error under *Love* v. *Wolf* (1964) 226 Cal.App.2d 378 [38 Cal.Rptr. 183]. This case does not amount to the type of conduct in *Love*. The court in *Love* found 60 instances of flagrant misconduct. The conduct was intentional, blatant and continuous and was carefully contrived and calculated to inflame the jury. (*Id.*, at

---

[7]The record surrounding this claimed misconduct is:
"Q. What would you expect the injuries to that passenger to be?
"MR. VIVIANO: Objection. Hypothetical based on facts not in evidence.
"THE COURT: Sustained.
"BY MR. MONAGHAN:
"Q. *Would you expect him to die—*
"THE COURT: I have sustained the objection.
"MR. MONAGHAN: I asked another question.
"THE COURT: It is the same substantive question. Ladies and Gentlemen, we will take a 15-minute recess. Please remember the admonition. A 15-minute recess. (A recess is taken.)" (Italics added.)

[8]This jury received the standard instruction: "As to any question to which an objection was sustained, you must not speculate as to what the answer might have been, or as to the reason for the objection."

p. 393.) There is no comparison between the conduct here and that of the trial counsel in *Love*.

## VI

The last issue in the County's cross-appeal is whether a letter from Bigboy's counsel to the trial court operates to estop Bigboy's challenge to the conditional new trial order.

It is clear from the letter it could not have this effect. The letter states it is offered in response to receipt of a copy of the order of the court prepared by county counsel. The letter attempts to point out omissions and factual matters which were inaccurately presented in the order proposed by county counsel. The letter specifically states it is not intended to suggest any action by the court and it does not waive any rights or acquiesce in any action regarding the new trial motion. Bigboy is not precluded from challenging the conditional new trial order by this letter.

## VII

The judgment granting a conditional new trial order is reversed, the jury's verdict is reinstated and the judgment on verdict so reinstated and awarding costs to the plaintiff is affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied May 4, 1984, and the petition of defendant and appellant for a hearing by the Supreme Court was denied June 20, 1984.