[No. D016459. Fourth Dist., Div. One. Mar. 30, 1994.]

PATRICK ROMERO, Plaintiff and Respondent, v.
JOHN J. RIGGS et al., Defendants and Appellants.

**COUNSEL**

McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Richard D. Barton, Michael J. Elia, Greines, Martin, Stein & Richland, Sheila S. Kato and Marc J. Poster for Defendants and Appellants.

Finkelstein & Finkelstein, Susan Finkelstein, Norman M. Finkelstein and Charles F. Campbell for Plaintiff and Respondent.

## OPINION

**NARES, J.**—John J. Riggs, O.D. (Riggs) and the Chicano Community Health Center doing business as Logan Heights Family Health Center (Center), appeal from an order granting a new trial to Patrick Romero (Romero) after a trial in which the jury found Center's employee Riggs had been negligent as to Romero, but also found such negligence had not caused Romero's eyesight problems. The trial judge disagreed and ordered a new trial, on the basis that in his view the evidence overwhelmingly supported a finding of causation. Because the reasons stated in the order are well supported in the record before us, we affirm.

### FACTS AND PROCEDURE[1]

Romero, then 42, visited Riggs at Center in January 1986. (Center is the only facility in San Diego providing eyeglasses to social services clients. Romero had quit working several years earlier, concerned among other things about his failing eyesight.) Riggs is (as Romero knew) an optometrist, not a medical doctor, but was trained in assessing eye diseases in patients and testing for glaucoma.

During his examination of Romero, Riggs conducted various measurements of Romero's vision and eye condition, and determined his vision was correctable to 20/20 in each eye. Riggs did not suspect Romero had glaucoma. Riggs told Romero to return for a follow-up visit in two years.

Romero did not obtain glasses from the January prescription until December 1986. Late that month Romero visited the Center to see Riggs, complaining that he could not see well with his new glasses. Riggs made another examination of Romero and prescribed new glasses because of myopic change. He also conducted another series of measurements and tests on Romero. Riggs did not notice cataracts, or suspect that Romero might have had glaucoma. Riggs also referred Romero to the University of California at San Diego (UCSD) for a neurological examination, as Romero stated that he had been hit on the head recently.

Romero visited Riggs again in November 1988. At this time Riggs noticed the development of cataracts, and observed that Romero's vision had further deteriorated. Riggs noted that Romero had not followed up on the referral to a neurologist. Riggs again did not suspect glaucoma, and told Romero to return in a year.

---

[1]Because there is sufficient evidence to support the jury's verdict and the order granting a new trial as well, we recite the facts only briefly, as the case involves no controversy over the evidence, but over the legal sufficiency of the order made below.

Romero returned for another visit in May 1989, again complaining of blurred vision with his glasses. Riggs made a referral to the UCSD ophthalmology department because of Romero's cataracts and Riggs's suspicion Romero had an optic nerve problem. Again, Riggs did not suspect that Romero might have glaucoma.

During the months which followed various UCSD medical doctors and a Center optometrist determined Romero in fact had glaucoma, and he was treated for it with little success. Jury trial commenced in 1991. A nationally known authority on glaucoma, Dr. Robert Weinreb, testified that Romero was suffering from glaucoma, and that if Romero had been properly diagnosed and treated at an earlier stage, much of his vision loss could have been prevented, although damage that had taken place was now not reversible.

Other expert witnesses, including two optometrists and three more ophthalmologists, testified to the same general effect as Weinreb, while (apart from Riggs himself) only one optometrist and one ophthalmologist testified that the treatment Riggs had given Romero was proper.

The matter was submitted to the jury with directions to return verdicts on special issues. They responded "Yes" to the question, "Was the defendant negligent in the care and treatment of plaintiff?" They also, however, answered the question, "Was such negligence a legal cause of injury to the plaintiff?" with, "No."[2]

Subsequently, Romero brought various posttrial motions, including a motion for new trial on grounds of (1) misconduct by the jurors and (2) insufficiency of the evidence to support the finding of no causation. In its oral remarks after argument on the new trial motion, the court stated that in its view "there was not anything in this case that adequately [rebuts]" a finding of causation. The court also stated:

"Perhaps Mr. Romero was negligent in some way. Perhaps he was lazy. Perhaps they found any number of things. But they couldn't have found no causation, under the evidence in this case. They couldn't properly find no causation in this case. They may have thought about the smoke screen of his being referred to a neurologist and he didn't go, as being a negligent act on his part. But the fact is that the later neurological study showed there was no neurological problem. So if he had gone, it would have made no difference one way or the other. But that's something that I think the jury may have considered; that he didn't look after himself properly, et cetera.

"I'm afraid that, under my evaluation of this case, I have to grant the motion for a new trial."

[2]The vote on each issue was nine to three.

Later, in the written statement of decision required by Code of Civil Procedure section 657,[3] the trial court summarized its view of the matter as follows:

"The motion for new trial herein was granted because of insufficiency of the evidence to justify the verdict.

"The jury found negligence on the part of the defendant doctor, with which this Court agrees. The jury found against the plaintiff on the issue of causation and returned a defense verdict. The medical evidence was overwhelming that the early onset and the severity of the effect upon the plaintiff and his early deterioration of eyesight was a direct and proximate result of the negligent failure of the defendant doctor to diagnose and treat the plaintiff's condition. The overwhelming evidence was that, had the defendant doctor not been negligent and had proper treatment [been] instituted when it could and should have been, the probabilities are that plaintiff's failure of eyesight would have been forestalled or delayed, if not prevented. The evidence was insufficient in these particulars to support the verdict and a new trial should be granted."

## STANDARD OF REVIEW

■ "In reviewing the order granting a new trial, we apply the following rule: 'The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears. This is particularly true when the discretion is exercised in favor of awarding a new trial, for this action does not finally dispose of the matter. So long as a reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside. [Citations.]' (*Jiminez* v. *Sears, Roebuck & Co.*(1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681, 52 A.L.R.3d 92].)

[3]Code of Civil Procedure section 657 provides in relevant part: "The verdict may be vacated . . . and a new . . . trial granted . . . for any of the following causes [i.e., grounds], materially affecting the substantial rights of [a] party: . . . [¶] 6. Insufficiency of the evidence to justify the verdict."

In a later paragraph section 657 also requires, in addition to a specification of *grounds*, a statement of *reasons* as well: "If an order granting [a new trial] motion does not contain [a] specification of reasons, the court must, within 10 days after filing such order . . . file such specification of reasons in writing with the clerk."

In the last paragraph section 657 states: "[T]he order shall not be affirmed upon the ground of the insufficiency of the evidence to justify the verdict . . . unless such ground is stated in the order granting the motion."

"Renowned California legal scholar, B. E. Witkin, describes the rule and its reason as follows: 'The trial judge is familiar with the evidence, witnesses, and proceedings, and is therefore in the best position to determine whether, in view of all the circumstances, justice demands a retrial. Where error or some other ground is established, his discretion in granting a new trial is seldom reversed. The presumptions on appeal are in favor of the order, and the appellate court does not independently redetermine the question whether an error was prejudicial, or some other ground was compelling. Review is limited to the inquiry whether there was any support for the trial judge's ruling, and the order will be reversed only on a strong affirmative showing of abuse of discretion. [Citations.]' (8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 135, p. 538.)" (*Sandco American, Inc.* v. *Notrica* (1990) 216 Cal.App.3d 1495, 1506 [265 Cal.Rptr. 587].)

Otherwise stated, an order granting a new trial will not be disturbed if it adequately refers to evidence in the record to support the action taken. Here, the order adequately refers to such evidence, and we thus affirm the grant of new trial.

## DISCUSSION

■ Recognizing that there was indeed substantial evidence to support the new trial order, Center's appeal does not attempt to challenge the existence of such evidence, but is restricted to Center's assertion that the order is deficient (fatally) in form, in that the requirements for a statement of reasons[4] were not properly complied with herein, and thus the grant of new trial should be reversed and the jury verdict reinstated.[5] Center asserts case authority from both the Supreme Court and this court requires such reversal. We disagree.

Center's argument is that the trial "Court's Specification Of Reasons Fails To Satisfy Either The Letter Or The Spirit Of Code Of Civil Procedure Section 657." To support the argument, Center relies on *Mercer* v. *Perez* (1968) 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315], and other cases which have cited to that decision. *Mercer* and its progeny, however, are of

---

[4] See *ante*, footnote 1.

[5] Romero also asserts that even if the order before us is found to be deficient, other error supports a grant of new trial. Center counters by asserting the absence of any such other error. We need not and do not, however, address these matters, for the reasons which follow.

no avail, as the circumstances of those cases are in no way comparable to those of the present case.

The new trial order under review in *Mercer* "recited only that 'The motion for a new trial is granted. The court is of the definite opinion, after analyzing the evidence in this case, that there has been a definite miscarriage of justice. The court is of the opinion that the jury trying this case should have rendered a verdict for the plaintiffs, and against the defendants.'" (*Mercer v. Perez, supra*, 68 Cal.2d at p. 108.)

As the court noted in *Mercer*, ". . . in the case at bar we find on the face of the written order . . . no[] clear and unmistakable expression of the court's intent . . . as to the ground on which the motion was granted." (*Mercer v. Perez, supra*, 68 Cal.2d at p. 110.) In the case before us, by contrast, the insufficiency-of-the-evidence ground for the new trial grant is clearly stated in the order quoted above.

The major point at issue in *Mercer*, however, was the then-new 1965 amendment to Code of Civil Procedure section 657 requiring a statement in the order granting a new trial of the trial court's *reasons*, as well as the *grounds*, for the new trial order. (*Mercer v. Perez, supra*, 68 Cal.2d at pp. 111-116.) As to this requirement, in *Mercer* ". . . no reasons whatever were furnished by the trial court, either in its order or by a subsequent specification in writing."[6] (*Id.* at p. 116.)

Again, on this central and dispositive issue the case before us is wholly distinguishable from *Mercer*. Here, as quoted *ante*, the trial judge clearly stated not only the *ground* (insufficiency of the evidence), but the *reason* for granting a new trial on the stated ground: "The medical evidence was overwhelming that the early onset and the severity of the effect upon the plaintiff and his early deterioration of eyesight was a direct and proximate result of the negligent failure of the defendant doctor to diagnose and treat the plaintiff's condition."[7]

---

[6]Because the statutory requirements had not been observed, the *Mercer* court reversed the grant of a new trial. (*Mercer v. Perez, supra*, 68 Cal.2d at p. 108.) The court then proceeded, however, to also reverse the original judgment, in part relying on the trial court's opinion that there had been a miscarriage of justice in the case. (*Id.* at pp. 124-127.)

[7]The detailed statement of reasons in the record before us also distinguishes this case from other cases cited by Center, including *Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 62 [107 Cal.Rptr. 45, 507 P.2d 653, 94 A.L.R.3d 1059] (". . . the 'verdict is excessive, that it is not sustained by the evidence' is . . . a statement of ultimate fact"); *Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 698 [106 Cal.Rptr. 1, 505 P.2d 193] ("'the

Center also cites us to our statement in *Bigboy* v. *County of San Diego* (1984) 154 Cal.App.3d 397, 404 [201 Cal.Rptr. 226], that "[i]t is helpful if the [trial] court declares what witnesses it believed." The citation is unhelpful to Center. As *Bigboy* noted, after a survey of several cases in which the new trial orders were affirmed, "[e]ach of these cases specifically directs the appellate court's attention to some aspect of the record which . . . convinces the trial judge the jury clearly should have reached a different decision." (*Id.* at p. 405.)

In this case, of course, the trial court's stated reasons for granting the new trial more than adequately "directs the appellate court's attention" to the aspects of the record which support the order; here, the "overwhelming" medical evidence of six experts as to the existence of causation in this case. No more is reasonably or sensibly to be required of a trial court.

"In sum, the appeal from an order granting a new trial depends upon the sufficiency of the reasons specified by the trial court. Whether these reasons are sufficient depends in turn upon whether there is a substantial basis in the record for the trial judge's decision. [Citations.]" (*Bigboy* v. *County of San Diego, supra,* 154 Cal.App.3d at pp. 405-406.)

In *Bigboy* we held that ". . . it is a futile effort to search the judge's statement of reasons for granting a new trial for any reference to any portion of the evidence that would . . . guide an appellate court in determining whether the 'jury clearly should have reached a different verdict.' " (*Bigboy* v. *County of San Diego, supra,* 154 Cal.App.3d at p. 406.) The statement of reasons was thus "insufficient as a matter of law." (*Id.* at p. 408.) In the case before us, by contrast, the evidence relied upon and referred to in the order (expert medical testimony on the issue of causation) is fully adequate both to guide our review and to supply a substantial basis for the order.

The final sentence of Code of Civil Procedure section 657 provides that an order granting a new trial on the ground of insufficiency of the evidence to support the verdict, as here, "shall be reversed as to such ground only if there is no substantial basis in the record for any of [the specified] reasons." In this case, "[w]e conclude there was a reasonable basis for the trial court's order granting a new trial under Code of Civil Procedure section 657 . . . . Thus, under the test of the *Jiminez* case, *supra,* 4 Cal.3d 379, 387, the order will not be set aside." (*Sandco American, Inc.* v. *Notrica, supra,* 216 Cal.App.3d at p. 1509.)

District completely and adequately discharged any obligation it had in the maintenance of the basin and dam' "); and also *Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 364 [90 Cal.Rptr. 592, 475 P.2d 864] (". . . the specification of reasons merely recited that . . . the defendant was not negligent").

## DISPOSITION

The judgment (order granting new trial) is affirmed. Respondent to recover costs on appeal.

Kremer, P. J., and Todd, J., concurred.