Filed 4/9/13  Sandvik v. Bozung CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| STEIN OVE SANDVIK,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>LORETTA BOZUNG,<br><br>      Defendant and Appellant. | A131667<br><br>(San Francisco County<br>Super. Ct. No. CGC-09-490001) |

Loretta Bozung appeals from a judgment upon a jury verdict finding in favor of Stein Ove Sandvik on claims for breach of an employment contract, quantum meruit, breach of a partnership agreement, breach of fiduciary duty, and violations of the Labor Code.  She contends that the trial court erred in submitting the question of whether Sandvik was an employee or an independent contractor to the jury.  She also argues that the evidence is insufficient to support the jury's verdict that Sandvik did not act as a contractor, and that the verdict forms were defective.  In a cross-appeal, Sandvik argues that the trial court erred by granting a new trial on the issue of damages for breach of the partnership agreement.  He also urges that the trial court erred by vacating the judgment, and denying prejudgment interest.  We agree with Sandvik on the latter two issues, but affirm the order granting a partial new trial.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Sandvik met Bozung in 2004 or 2005 through Andrew Stroud, a licensed contractor with whom he was working at the time.  Sandvik and Stroud worked on several construction jobs for Bozung.  Sandvik had previously been a licensed contractor,

1

but began working for Stroud in 2002.  Sandvik no longer wanted to be responsible for running a contractor business.

In June 2007, Sandvik began working with Bozung.  Bozung was in the business of acquiring and remodeling homes for profit.  In March or early April 2007, Bozung met with Sandvik and Stroud about working together on the property located at 1335 Jackson Street (the Jackson Street property).[1]  Bozung was interested in forming a partnership with Stroud and Sandvik to renovate the Jackson Street property.  Sandvik told Bozung that they needed Stroud because he was the licensed contractor.  Stroud opted not to work for Bozung because he feared losing control over his business.  He also got the feeling that Bozung wanted to work solely with Sandvik, and that she wanted to proceed as an owner/builder instead of hiring a licensed contractor.  Sandvik met again with Bozung concerning the Jackson Street property, and she told him that they could do the project with her pulling the permits as an owner/builder.   Bozung offered to pay Sandvik $75 an hour to be the project manager, which was $10 more per hour than he had been making working for Stroud.  Bozung claimed at trial that she did not realize that Sandvik was not a licensed contractor until they agreed to be partners on the property located at 298 Upper Terrace (Upper Terrace).

Bozung asked Sandvik to draft an employment contract to memorialize their agreement under which Sandvik would work on the Jackson Street property.  Sandvik had never drafted an employment contract so he used the Rocket Lawyer website on the Internet.  Bozung edited the contract to delete irrelevant paragraphs.  Bozung and Sandvik signed the employment contract on June 4, 2007.  The contract provided that Sandvik would commence full-time employment as a "Consultant" on the Jackson Street property beginning on June 4, 2007, and that he would be paid $75 per hour.  Sandvik agreed "to be subject to the general supervision of and act pursuant to the orders, advice and direction of" Bozung.

---

[1] Bozung purchased the Jackson Street property in May 2007.

2

On June 6, 2007, Bozung filed an application for a building permit for the Jackson Street property. On the application, Bozung declared she was "exempt from the contractor's license law, Business & Professions Code Section 7031.5." She further declared that "I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale . . . ."

Sandvik worked for Bozung from June 2007 through November 2008 when it became clear to Sandvik that Bozung was in arrears in paying him and that he could no longer afford to work for her. Bozung paid Sandvik only for an eight-hour day even if he worked 10 or more hours per day. Sandvik did not receive any vacation time and Bozung did not provide any employee benefits.

Sandvik maintained a daily log on "Google docs" detailing his expenses on the Jackson Street property. Bozung had access to the document and was kept abreast of the costs of the project. She was on site at the property twice a day during June and part of July and continued to spend extended periods of time on the job site during July and August. She was an active participant in the remodel. She worked on the window installation, welding in the kitchen, assisted in the framing process by holding or bringing materials, and assisted in the painting process. She was responsible for hiring all of the contractors for the job. She generated all of the punch lists for the property directing what needed to be done and the projected completion dates. She met with Sandvik about every two days to discuss the progress on the job. Sandvik advanced Bozung money for expenses he incurred on the project. He did not charge her for overhead or profit. Initially, Bozung paid Sandvik regularly, but as the project progressed, Bozung paid him less frequently.

In January 2008, Bozung and Sandvik discussed the possibility of forming a partnership to purchase and remodel properties. In July 2008, Sandvik toured the Upper Terrace property with Bozung and gave her his opinion on the condition of the property. Bozung purchased the property for $1,100,000 with the intent to remodel it and sell it as soon as possible. Sandvik lent her $60,000 toward the down payment of the property,

3

and Bozung obtained loans from hard-money lenders in order to make the purchase.[2] Bozung did not execute a promissory note for the money. Sandvik understood that he would work on remodeling the property and be paid wages and a 40 percent bonus for having advanced time, wages and material costs on the project.

Bozung testified that the terms of the partnership with Sandvik changed significantly in July 2008 when Sandvik realized that he did not want to be liable for the mortgage on the Upper Terrace property. She acknowledged that Sandvik contributed $60,000 toward the purchase price of the Upper Terrace property. Since this amount was less than 50 percent of the down payment on the property, she told Sandvik that his percentage of any proceeds on the sale of the property would be less. She estimated that amount as five to 10 percent of the proceeds, and Sandvik was to put "sweat equity" into the project in order to make up for his lack of down payment.

Sandvik worked as the project manager on the Upper Terrace property. Bozung and her architects prepared the plans for the project. She also received advice from her real estate agent. The property was significantly remodeled, including remodeling of the kitchen, living room, bedrooms and bathrooms. Bozung made all of the remodeling decisions as well as any decisions regarding the final results of the work. As with the Jackson Street property, Sandvik maintained a log beginning in August 2008 of the monies he advanced on the Upper Terrace property, both for expenses and labor. He advanced a total of $31,553 for labor on the project and $34,482.02 for materials. The latter sum included a payment of $6,578 that Sandvik made on the Upper Terrace mortgage.

Sandvik understood that he was to be paid when the house was sold at the same $75 per hour rate he had earned on the Jackson Street property. He worked on the project for nine and a half to 10 weeks, approximately 10 to 14 hours per day, and often on

---

[2] The $60,000 included $40,000 out of Sandvik's joint bank account with his wife, Lois Miyashiro, and a $20,000 loan from Michael Plotkowski, a personal friend of Sandvik.

weekends. Bozung later told him that the most he would be able to get would be 30 percent of the net proceeds.

By November 2008, Sandvik's Google docs showed that Bozung owed Sandvik $78,838, representing primarily wages and the balance she owed him for expenses. At that point, Sandvik realized that he could no longer afford to keep working for Bozung, and he began to seek other employment. Sandvik, per Bozung's request, provided her with two invoices detailing how much he was owed. He last spoke with Bozung by telephone on November 17, 2008. He did not recall the substance of the conversation but did remember that it was adversarial and that both of them were angry. Sandvik was stressed financially, and discussed the money Bozung owed him. He subsequently left voice mail messages for her, but she did not return the calls.

Bozung testified that she had an argument with Sandvik in mid-October 2008 between five to nine days before she listed the Upper Terrace property for sale. She opined that the partnership ended at this point because he stopped paying for bills on the property, he was not meeting her time frame, and the "place was still a shambles." The remodeling work, however, was substantially complete as Bozung acknowledged she listed the property shortly after the argument with Sandvik.

 Bozung sold the Upper Terrace property on February 26, 2009 for $1,250,000. She paid the hard money lenders out of escrow, and after closing costs received net proceeds of $272,183.82. From the proceeds she paid back her uncle and her friend, both of whom had loaned her money toward the mortgage, and kept the remaining $170,000 of proceeds for herself. She acknowledged that she did not pay the $40,000 loan from Sandvik and his wife.

Bozung never paid Sandvik any money for his work or expenses on the project. She did not render any accounting to him of the proceeds on the sale of the property. Bozung believed that Sandvik had overcharged her on the Jackson Street property.

Sandvik's theory at trial was that he was entitled to be paid for his work on both the Jackson Street and Upper Terrace projects pursuant to the employment contract. In closing argument, his counsel argued alternatively that if there was a partnership on the

5

Upper Terrace property then Sandvik was entitled to a five or 10 percent partnership interest. Sandvik's counsel prepared a slide that he showed during his argument which calculated a loss on the Upper Terrace property. By counsel's calculations, Sandvik's share of the loss was either $5,898 (five percent interest) or $11,797 (10 percent interest), and given Sandvik's contribution to the project for materials and outside labor of $129,724, Bozung owed him either $123,826 (five percent interest) or $117,927 (10 percent interest) upon the sale of the property.

Sandvik filed a complaint seeking damages for breach of contract and violations of the Labor Code, among other claims, on July 1, 2009. Bozung answered the complaint and filed a cross-complaint against Sandvik for breach of contract, breach of an oral partnership agreement and violation of the Business and Professions Code[3], among other claims. Sandvik subsequently filed a first amended complaint in October 2010. Trial commenced on November 17, 2010. By special verdict, the jury found in favor of Sandvik on his claim that Bozung breached the employment contract as to the Jackson Street project. It found that Sandvik was entitled to $53,000 for unpaid wages for his labor on the Jackson Street project and $35,000 for unreimbursed expenses. The jury further found that Bozung was liable to Sandvik on a quantum meruit theory on the Upper Terrace Street project. The reasonable value of Sandvik's unpaid services was $53,000 plus he incurred a total of $104,700 in unpaid costs on both projects.

Further, as to the Upper Terrace project, the jury found that Sandvik and Bozung entered in an oral partnership agreement in the purchase, remodeling, and sale of the Upper Terrace property which Bozung breached. Bozung also breached her fiduciary duty to Sandvik resulting in damages to him of $120,000.

After the jury was polled on its findings, the parties stipulated that the court would have the power to prevent any duplication of recovery, particularly with respect to the jury's findings as to the Upper Terrace property that Sandvik was entitled to both the

---

[3] Further statutory references are to the Business and Professions Code, unless otherwise indicated.

6

reasonable value of unpaid services he rendered and to damages for the harm he suffered due to Bozung's breach of her fiduciary duty. On January 4, 2011, the court entered judgment on the jury verdict in favor of Sandvik in the amount of $226,350 plus interest from the date of entry of the judgment.

On January 12, 2011, Bozung moved for judgment notwithstanding the verdict, or in the alternative, for a new trial or to vacate the judgment. On February 10, 2011, she withdrew her motion to vacate the judgment. Sandvik, in turn, filed a motion for partial judgment notwithstanding the verdict, and in the alternative, for a partial new trial on the issue of inadequate damages. He also filed motions for prejudgment interest and for attorney fees.

On February 17, 2011, the court tentatively granted Sandvik's request for attorney fees at the rate of $250 hour for a total of $203,769.62. The court directed counsel for Sandvik to prepare an order and to include post-verdict attorney fees, and set the matter for further review the following week. That same day, the court denied Sandvik's motion for prejudgment interest.

On February 28, 2011, the court granted Bozung's motion for a new trial limited to the issue of excessive damages on the Upper Terrace property subject to Sandvik accepting a remittitur. The court ruled that the jury's award of damages was excessive to the extent it awarded the sum of $120,000 for harm Sandvik suffered on his breach of fiduciary claim. The court found that there was no agreement as to a specific partnership percentage and no credible evidence to support the jury's award. The court determined that an equitable amount of damages on Sandvik's claim was $60,600, and ordered that unless Sandvik agreed to the reduction in damages within 10 days, the court would grant a new trial on the issue of damages on the Upper Terrace property. The court specifically denied Bozung's motion for a new trial in all other respects, denied her motion for judgment notwithstanding the verdict, and her motion to vacate the judgment. The court also denied Sandvik's motions for a partial judgment notwithstanding the verdict and a partial new trial. The court further ordered that counsel confer and agree on a future date for a hearing regarding attorney fees.

7

On March 30, 2011, Bozung filed a notice of appeal from the judgment and from the partial new trial order. On April 26, 2011, Sandvik filed a cross-appeal from the judgment and from the partial new trial order and the order denying prejudgment interest.[4]

On April 18, 2011, Bozung moved to set aside the entire judgment based on the court's having granted a partial new trial on the issue of the damages for Upper Terrace. Sandvik opposed the motion on the ground that Bozung's filing of a notice of appeal and his filing of a cross-appeal divested the trial court of jurisdiction. On May 26, 2011, the court issued an order vacating the judgment. The court also issued an order awarding attorney fees to Sandvik in the amount of $210,686.[5]

On August 9, 2011, Sandvik filed an amended notice of cross-appeal from the order vacating the judgment.

## II. DISCUSSION

Bozung first contends that the trial court erred in submitting to the jury the issue of whether Sandvik was an employee or an independent contractor under the employment contract. We conclude that Bozung waived the issue, and that in any event, the question was one for the jury.

In the trial court, Sandvik moved in limine to preclude Bozung from offering extrinsic evidence to contradict the terms of the employment contract. Bozung opposed the motion arguing that the contract was vague, ambiguous and capable of different interpretations. She contended that her defense was that Sandvik was required to have a contractor's license because under section 7026.1, a consultant to an owner-builder must have a contractor's license. She urged that to exclude evidence on the meaning of the terms of the contract simply because there was an integration clause would defeat the

---

[4] An order granting a partial new trial is appealable. (*Cobb v. University of So. California* (1996) 45 Cal.App.4th 1140, 1144 ["If a new trial is ordered as to some issues but not as to others (for example, to retry the issue of damages but not of liability), the order granting the new trial is appealable by any party aggrieved by the order, including the moving party who sought a new trial as to all issues"].)

[5] The order awarding attorney fees is not before us.

8

policy of deterring unlicensed persons from engaging in the contracting business.  The trial court denied Sandvik's motion, stating, "I think you just can't decide this.  It's conceivable you might be entitled to a jury instruction later on, depending upon how the evidence goes, but I doubt it.  I mean, I'd have to find that there was no triable issue of fact about that.  I don't know.  Maybe that's the case.  But I'm not deciding it now."

The trial court also denied Bozung's motion for nonsuit on all of Sandvik's causes of action with the exception of his claim of breach of oral loan agreement on Upper Terrace.  Bozung argued that there was no substantial evidence that Sandvik was an employee but rather the evidence showed he required a contractor's license, and thus his claims were barred by the Contractor's State Licensing Law, section 7000 et seq.  The trial court found that there was a triable issue of fact on whether Sandvik had any right to control or discretion in the work he performed, or whether he was subject to Bozung's directions.

The issue of whether Sandvik was an employee or an independent contractor was therefore submitted to the jury.  The special verdict specifically required the jury to address the following questions:  (1) "Did the contract give Plaintiff Sandvik the right to control or discretion in the manner of performance so as to determine the final results of the work performed?"; and (2) "Does the term 'consultant' in [the employment contract] mean independent contractor or employee?"  Bozung agreed to the form of the special verdict.

Having asked the court to submit the question of whether Sandvik was an employee or independent contractor to the jury, we can readily conclude that Bozung waived her claim that the court erred in doing so.   " 'Under the doctrine of invited error, where a party, by his conduct, induces the commission of an error, he is estopped from asserting it as grounds for reversal. [Citations].  Similarly an appellant may waive his right to attack error by expressly or impliedly agreeing at trial to the ruling or procedure objected to on appeal.' " (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1685–1686, quoting *Redevelopment Agency  v. City of Berkeley* (1978) 80 Cal.App.3d 158, 166.)   Here, Bozung acquiesced to the special verdict directing the jury to consider

9

whether Sandvik was an employee under the employment contract. She cannot now complain that the question should have been decided by the court. (See *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 857 [challenge to precision of special verdict questions waived where appellants failed to object in the trial court]; *Stevens v. Owens-Corning Fiberglas Corp.* (1996) 49 Cal.App.4th 1645, 1653 [party could not attack verdict that resulted from a jury instruction given at its request].)

Even if Bozung's claim were not barred, her contentions are without merit. Bozung sought to show that the term " 'consultant' " in the contract was ambiguous. She argued that a " 'consultant to an owner-builder' " is within the definition of contractor under section 7026.1.[6] She further urged that since the employment contract provided that Sandvik was to be a consultant for the work on the Jackson Street property, and she owned the residence there, then Sandvik was an unlicensed contractor. According to Bozung, the meaning of the term, "consultant," was thus the ultimate issue in this case.

Ordinarily, where there is a written contract, its interpretation is a question of law for the court. (*Albaugh v. Moss Construction Co.* (1954) 125 Cal.App.2d 126, 130–131.) Here, however, the use of the term, "Consultant," created an ambiguity in the contract given that the contract did not reveal the nature of the work Sandvik was to undertake nor did it disclose the nature of Bozung's business. In connection with Sandvik's duties, the contract provided simply that "[T]he Employer agrees to employ the Employee as a Consultant to 1335 Jackson, and the Employee agrees to be employed on the terms and conditions set out in this Agreement. The Employee agrees to be subject to the general supervision of and act pursuant to the orders, advice and direction of the Employer. [¶] The Employee will perform any and all duties now and later assigned to the Employee by

---

[6] Indeed, section 7026.1 defines the term, contractor" to include: "(b) Any person, consultant to an owner-builder, firm, association, organization, partnership, business trust, corporation, or company, who or which undertakes, offers to undertake, purports to have the capacity to undertake, or submits a bid to construct any building or home improvement project, or part thereof."

10

the Employer. The Employee will also perform such other duties as are customarily performed by one holding such a position in other, same or similar businesses or enterprises as that engaged in by the Employer." There was nothing in the language of the contract that revealed in what capacity Sandvik would consult on the Jackson Street property. Under these facts, the court properly allowed evidence on the issue of the meaning of the terms of the employment contract. (See *Employers Reinsurance Co. v. Superior Court* (2008) 161 Cal.App.4th 906, 920 [extrinsic evidence admissible to aid in interpretation of ambiguous contract term].)

Under the Contractors' State Licensing Law, section 7000 et seq., whether a person is acting as a contractor or an employee is generally a question of fact. (*Rodoni v. Harbor Engineers* (1961) 191 Cal.App.2d 560, 561–562; see also *Jackson v. Pancake* (1968) 266 Cal.App.2d 307, 311.) Section 7026 defines a contractor under the statutory scheme, as one "who undertakes to . . . construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building . . . or other structure, project, development or improvement, or to do any part thereof . . . ." A person who is engaged in the business or acting in the capacity of a contractor is prohibited from bringing an action to recover compensation unless he was licensed during the period he performed the work. (§ 7031, subd. (a).) Section 7053, provides an exception from the licensing requirement for an employee working on a construction project who (1) receives only wages as compensation, (2) does not carry on an independent business, and (3) is subject to this employer's right to control and discretion over the work performed.[7] Thus, in the present case, it was Bozung's strategy to prove that Sandvik did not meet these exceptions but was, rather, an unlicensed contractor who was not entitled to bring the action against her for damages.

---

[7] Section 7053 provides: "[T]his chapter does not apply to any person who engages in the activities herein regulated as an employee who receives wages as his or her sole compensation, does not customarily engage in an independently established business, and does not have the right to control or discretion as to the manner of performance so as to determine the final results of the work performed."

11

Bozung contends that Sandvik did not meet his burden of proving the second and third prongs of the employee exception set forth in section 7053 to the licensing requirements for contractors. Bozung concedes that Sandvik satisfied the first prong requiring that the person received wages as his sole compensation, but argues there was insufficient evidence to prove that Sandvik did not customarily engage in an independently established business and that he did not have the right to control the manner of performance so as to determine the final results of the work.

When an appellant challenges the sufficiency of the evidence, we apply the substantial evidence standard of review. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957.) " ' "[T]he power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor . . . . An appellate court does not reweigh the evidence or evaluate the credibility of witnesses, but rather defers to the trier of fact." [Citations.]' " ( *Id.* at pp. 957–958.) "[W]here there is substantial evidence to support the finding that a relationship of employer and employee, or that of principal and agent, existed between the [parties], that determination is controlling on appeal, even though there may be evidence of elements which would have reasonably supported a contrary decision. [Citation.] Under such circumstances, the burden is on the defendant to rebut that evidence by proof that plaintiff was acting as an independent contractor." (*Malvich v. Rockwell* (1949) 91 Cal.App.2d 463, 468.)

Bozung argues that the evidence showed Sandvik worked with Stroud in an independently established business in which he shared profits from 2002 to 2007. But this is irrelevant to whether the jury's finding is supported by the record. In determining the relationship of the parties, various factors must be considered including "the payment of wages, the right to hire and discharge the workman and to direct and control the operations . . . whether the alleged contractor is carrying on an independent business . . . the manner and terms upon which the compensation is to be paid, the duration and

12

conditions of employment, the question as to whether the employer may terminate the employment without cause at any time, and whether or not the parties believed they were creating a relationship of employer and employee." (*Malvich v. Rockwell, supra,* 91 Cal.App.2d at p. 468.) Thus, the fact that at some point Sandvik worked with Stroud and shared profits was not determinative of whether Sandvik was an independent contractor at the time he worked on the Jackson Street and Upper Terrace properties. Rather, the question for the jury was whether Sandvik was carrying on an independent business while he was under contract to Bozung. The evidence on that issue showed that Sandvik worked exclusively for Bozung during the relevant period, and that he was paid wages in accordance with the employment contract.

With respect to the third prong of section 7053 — whether Sandvik was under the control and discretion of his employer — the evidence demonstrated that Bozung directed the Jackson Street project, making changes to plans prepared by her architects, directing Sandvik to redo work that had been completed, and supervising the work on a daily basis. Sandvik did not hire the contractors for the job, but instead obtained bids and made recommendations to Bozung who ultimately approved which bids to accept. Bozung also directed when and where to buy materials. Sandvik testified that he often had multiple telephone conversations with Bozung on a daily basis over "what I was going to do, why I was doing [it], what we were likely to do, and what we needed to buy." The evidence as a whole demonstrated that Sandvik was subject to Bozung's supervision. In sum, there was more than ample evidence in the record to support the jury's finding that Sandvik was an employee and not an independent contractor.[8] (See *Dahl-Beck Electric Co. v. Rogge* (1969) 275 Cal.App.2d 893, 900 [determination of whether person is an employee

---

[8] The evidence also showed that Bozung paid Sandvik wages of $75 an hour on the Jackson Street project pursuant to the employment contract; that Sandvik drafted the contract per Bozung's request, and Bozung made several revisions to the agreement before it was finalized; that Bozung applied for the permit to perform the remodel on the Jackson Street project and designated herself as the owner-builder; and that Sandvik testified that Bozung "pull[ed] her own permits" because she knew that Sandvik was unlicensed.

13

or independent contractor is governed primarily by right of control resting in the claimed employer].)

Bozung also contends that the court erred in its instructions to the jury. In particular, she asserts that the court did not instruct the jury on the meaning of the terms "employee" and "contractor." Further, she argues that question No. 7 of the special verdict was improperly drafted because it references jury instructions which she now contends are incorrect and do not refer to the actual testimony or conduct of the parties.

Bozung's contentions are meritless. First, she did not object to the special verdict questions or to the jury instructions before the case was submitted to the jury. She concedes that she did not object to question No. 7 of the special verdict which required the jury to decide whether the term "consultant" meant independent contractor or employee, but argues she preserved the issue because she objected to the jury instructions in her motion for judgment notwithstanding the verdict. This objection was too late. " ' "A party should not be permitted to remain quiet and take the chance of a favorable verdict, and then, if the verdict is unfavorable, raise the objection on appeal." ' " (*Valentine v. Kaiser Foundation Hospitals* (1961) 194 Cal.App.2d 282, 291; disapproved on other grounds in *Siverson v. Weber* (1962) 57 Cal.2d 834, 839.) We treat the issue as waived. (See *Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1555 [appellant cannot submit matter for determination by court and then contend on appeal that matter should not have been decided].) Bozung's related contention — that the court erred in changing the language of section 7053 in jury instruction No. 28 and special verdict question No. 6 "from 'discretion as to the manner of performance' to 'discretion in the manner of performance' " and changing " 'result' to 'results' " — is feckless. We fail to discern any meaningful distinction between the statutory language and the instructions given.

Bozung contends that question No. 40 of the special verdict, which asked if Sandvik was a contractor at the Jackson Street property, erroneously referred the jury to instruction No. 56 which set forth the rule that a "person who utilizes the services of an unlicensed contractor may recover all compensation paid to the unlicensed contractor for

14

performance of any act or contract." (See § 7031, subd. (b) [person who utilizes services of unlicensed contractor may bring action to recover all compensation paid].) She argues that the instruction is confusing because the jury should instead have been referred to instruction No. 54 defining the term, "contractor."

Again, Bozung waived this issue because she did not object to the form of the special verdict below. (*Electronic Equipment Express, Inc. v. Donald H. Seiler & Co., supra,* 122 Cal.App.3d at p. 858, see also, *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 265 [party must object to defective verdict before jury is discharged to preserve issue].) Moreover, as pointed out by Sandvik, any error in question No. 40 on the verdict form was invited by Bozung. Counsel for Bozung focused on question No. 40 in closing argument and directed the jury to "shortcut this whole process" by finding that Sandvik needed a contractor's license. Counsel explained "[t]here's a box on the special verdict form, number 40. It's under the heading that says 'Affirmative Defense of Defendant Bozung. Plaintiff Sandvik is an unlicensed contractor and may not recover.' [¶] The first question is, 'Did Plaintiff Sandvik perform the work of a contractor at Jackson Street?' You can answer yes or no. And if you answered yes, which I think that's what the law says you have to do, then Mr. Sandvik cannot collect the money he's claiming . . . ." Having thus relied upon the verdict form below, Bozung cannot now complain that question No. 40 was confusing and referred to an inapplicable jury instruction when in fact it referenced an instruction pertaining to her defense, viz., that she could recoup any compensation paid to Sandvik because he was unlicensed. (See § 7031, subd. (b).)

Bozung raises an additional claim concerning the verdict form, namely, that its structure allowed the jury to skip question Nos. 41 to 47 if it found that Sandvik was not a contractor. Those questions asked the jury to determine whether Sandvik performed the work as a contractor on Upper Terrace, whether he received wages as his sole compensation for the Jackson Street and Upper Terrace projects, whether he was customarily engaged in an independently established business while working on the Jackson Street and Upper Terrace projects, and whether he had the right to control the

15

manner of performance on the work performed on both projects. She argues that the jury was prevented from deciding these issues.

Bozung's argument is without merit. The jury was asked to determine whether Sandvik was an employee or independent contractor under the employment contract (question No. 7) and whether he acted as an unlicensed contractor (question No. 53). The jury found not only that Sandvik was not a contractor on the Jackson Street project (question No. 40), it determined that he was not an unlicensed contractor (question No. 53.) The jury thus rejected Bozung's defense that Sandvik was an unlicensed contractor, and thus implicitly found that he met the employee exception of section 7053 to the licensing requirement for contractors.

### III. SANDVIK'S CROSS-APPEAL

The jury found that the employment contract did not apply to the Upper Terrace project. Instead, the jury accepted Bozung's theory that she entered into an oral partnership agreement with Sandvik to purchase, renovate, remodel, and sell the Upper Terrace property. The jury, however, found that Bozung breached her fiduciary duty to Sandvik under the partnership agreement and owed him $120,000 in damages for his share of the sale proceeds. The court found the amount of damages to be excessive and granted a new trial on the issue of damages on the Upper Terrace property. Sandvik contends that the jury's damages award should be reinstated because the court's reasoning for rejecting the award is not supported by the evidence or the law.

"On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion . . . except that (a) the order shall not be affirmed upon the ground of insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, unless such ground is stated in the order granting the motion and (b) on appeal from an order granting a new trial . . . upon the ground of excessive or inadequate damages, it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons."

16

(Code of Civ. Proc., § 657; see *Bigboy v. County of San Diego* (1984) 154 Cal.App.3d 397, 403 [*Bigboy*].) "[T]he appeal from an order granting a new trial depends upon the sufficiency of the reasons specified by the trial court. Whether these reasons are sufficient depends in turn upon whether there is a substantial basis in the record for the trial judge's decision." (*Bigboy*, *supra*, 154 Cal.App.3d at pp. 405–406.)

Sandvik argues that the court's order fails to identify the portion of the record that shows the jury should have reached a different result. The court's order, however, is not inadequate. The court stated that it relied upon all of the evidence and the reasonable inferences that could be drawn from it, and found that the damages awarded for the Upper Terrace project were excessive. In particular, the court noted that the project lost money; "[t]he parties never reached an agreement on how profits were to be shared, nor was there any agreement or discussion concerning what would happen if the project lost money. Plaintiff contributed a lesser amount of funds than was originally contemplated. After Defendant purchased the Property on August 19, 2008, the overall market for the sale of residential property changed for the worst with the financial crisis. Defendant, who owned the property, improved it less extensively and far more quickly than was originally contemplated and then put the property on the market for sale. It was sold on February 26, 2009 . . . ." The court further noted that there was no agreement between the parties on a specific partnership percentage.

The court then focused on the exhibits that were entered at trial on the purchase, renovation, and sale of the Upper Terrace property and found that an award of $60,600 was fair and reasonable for the following reasons: "1. The property was sold for $1,250,000 (See Exhibit 67). [¶] 2. The property was purchased for $1,142,219 (See Exhibit 36). [¶] 3. The Court finds the net sale proceeds to be $275,000 (See Exhibit 67).[] [¶] The principal real estate loans were deducted when the property was sold but there were other loans the parties obtained which were contributed. From the net sale proceeds amount of $275,000, the Court deducts the amount of loans that Ms. Bozung repaid of $103,000. See Exhibits 68 (Loan from Yvonne Hoffman) and 69 (Loan from Emmett A. Bozung). The Court also deducts a loan made to Mr. Sandvik of $20,500,

17

from Mr. Plotkowski. See Exhibit 44 (November 10, 2008 loan). The leaves $151,500. The Court allocates this remaining amount according to the contributions made by Ms. Bozung and Mr. Sandvik. For Mr. Sandvik, the court takes his investment of $40,000 and expenses of $70,000, for a total of $110,000, and for Ms. Bozung's contribution, the Court finds it to be $163,000. See Defendant Loretta Bozung's Memorandum of Points and Authorities in Support of Motion for New Trial, Judgment Notwithstanding Verdict, and to Vacate Judgment, 15.[] This gives the following percentages: 40% for Sandvik and 60% for Bozung. Multiplying these percentages by $151,500 yields the following amounts: $60,600 for Mr. Sandvik at 40% and $90,900 for Ms. Bozung at 60%." The court thus reduced the jury award to $60,600 for Sandvik.

As the court explained, the jury's calculation of damages was not supported by the record, particularly where the evidence showed that the parties failed to come to an understanding of their respective partnership percentages. The court's method was substantially supported by the parties' exhibits and testimony, hence there is no basis for reversal. (Code Civ. Proc., § 657; *Bigboy, supra,* 154 Cal.App.3d at p. 405.)

Sandvik argues that the court's order fails to acknowledge Bozung's testimony that Sandvik's partnership share was five to 10 percent. But Bozung's testimony was equivocal; she did not state that the parties agreed that Sandvik's partnership share would be five to 10 percent, only that his share would be substantially less, possibly five to 10 percent but based on a ratio of their respective investments in the project. Sandvik also relies on language in *Bigboy* that suggested a court's order granting a new trial should identify criticized evidence or which eyewitnesses it believed and what testimony it disregarded. (*Bigboy*, *supra*, 154 Cal.App.3d at p. 404.) Sandvik's reliance on *Bigboy* is misplaced. Here, the court's stated reasons adequately directed us to the portions of the record it found to support its order. In particular, the court referenced the parties' exhibits directing us to the figures it used to support its order. Nothing more was required. (See *Romero v. Riggs* (1994) 24 Cal.App.4th 117, 124 [court's statement of reasons sufficient where it directs parties to the expert medical testimony on the issue of causation].)

Sandvik further asserts that it is irrelevant that the parties did not come to an agreement on what they would do if the project lost money citing language in *Cal. Emp. Etc. v. Walters* (1944) 64 Cal.App.2d 554, 558 that " 'an agreement to divide profits implies an agreement for corresponding division of losses.' " But the record shows that the parties here did not agree on how they would divide any profits. The court's approach acknowledges Sandvik's capital and expense contributions to the partnership and is substantially supported by the record. We therefore affirm the trial court's order granting a partial new trial on the amount of damages on the Upper Terrace project.[9]

Sandvik next contends that the trial court erred by vacating the judgment. Bozung concedes the error.

On February 28, 2011, the court granted the partial new trial on the Upper Terrace damages subject to Sandvik accepting a reduced jury award on Upper Terrace in the amount of $60,600, and denied Bozung's motion to vacate the judgment. Sandvik did not agree to the remittitur, and on March 30, 2011, Bozung filed this appeal. On April 18, 2011, Bozung moved to set aside the judgment on the ground that it was now an interlocutory judgment given the court's grant of a partial new trial. Sandvik opposed the motion, contending that Bozung's filing of the appeal divested the trial court of jurisdiction to take any further action with respect to the judgment. The court, however, nonetheless issued an order vacating the judgment on May 26, 2011.

The court lacked jurisdiction to vacate the judgment. Subject to certain exceptions not applicable here, "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby . . . ." (Code Civ. Proc., § 916, subd. (a).) "The purpose of the automatic stay

---

[9] Sandvik argues that the court's order is not supported by the evidence because it fails to account for the loss sustained by the partnership on the Upper Terrace project. He relies on a slide prepared by his counsel and shown during closing argument to support his calculation of damages. The slide used by counsel setting forth how he calculated the damages in the event the jury found that Sandvik was a partner on the Upper Terrace project, and counsel's argument about the slide, however, were not evidence. (See CACI No. 5002.)

19

provision of section 916, subdivision (a) 'is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The [automatic stay] prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it.' " (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189, quoting *Elsea v. Saberi* (1992) 4 Cal.App.4th 625, 629.) A trial court thus has no power to vacate or modify a judgment or order that has been appealed. (*Varian* at pp. 189–190.) Accordingly, we reverse the court's order vacating the judgment.

Finally, Sandvik contends that the trial court erred in denying his motion for prejudgment interest. In the trial court, Sandvik argued that he was entitled to an award of pre-judgment interest of $37,697.86 on the Jackson Street project. On appeal, he claims prejudgment interest of $37,354.18, omitting interest on what the jury awarded in excess of what he asserted he was owed based on the Google docs spreadsheet. We conclude that Sandvik is entitled to the former amount because the minor errors in his Google docs spreadsheet[10] did not render the award uncertain as to preclude prejudgment interest. (*KGM Harvesting Co. v. Fresh Network* (1995) 36 Cal.App.4th 376, 391–392 [minor errors in the calculation of damages did not render sum uncertain].)

Civil Code section 3287, subdivision (a) provides that "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ." Amounts recoverable as wrongfully withheld payments of salary are damages within the meaning of this section. (*Olson v. Cory* (1983) 35 Cal.3d 390, 402.)

" 'Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of [Civil Code] section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are

---

[10] At trial, evidence was adduced that Sandvik had additional receipts for expenses that were not contemporaneously recorded in the spreadsheet.

20

recoverable but where their dispute centers on the issue of liability giving rise to damage.' " (*Wisper Corp. v. California Commerce Bank* (1996) 49 Cal.App.4th 948, 958; quoting *Esgro Central, Inc. v. General Ins. Co.* (1971) 20 Cal.App.3d 1054, 1060.) The purpose of the award is to make the plaintiff whole for the accrual of wealth which could have been produced during the period of loss. (*Wisper*, *supra*, 49 Cal.App.4th at p. 960.)

Sandvik is entitled to prejudgment interest here on the $88,000 awarded by the jury on the Jackson Street project for breach of the employment contract. These damages, which included sums owed for wages, were capable of being ascertained by mathematical calculation from information supplied by Sandvik to Bozung. (See *Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 774 [test for recovery of prejudgment interest is whether defendant knows the amount owed or can ascertain it from reasonably available information].) Accordingly, Sandvik is entitled to prejudgment interest in the amount of $37,697.86. This amount includes $2,061.23 for prejudgment interest owed on the penalties of $18,350 awarded for nonpayment of wages and failure to furnish a wage statement under Labor Code section 218.6. Bozung conceded below that she was liable for interest on the penalties.

## IV.  DISPOSITION

The order granting a partial new trial on the Upper Terrace damages is affirmed, and the matter is remanded to the trial court for proceedings consistent with this opinion. The order vacating the judgment is reversed. The court is directed to reinstate the judgment with the exception of the $120,000 Upper Terrace damages award, and to award Sandvik prejudgment interest in the amount of  $37,697.86. Sandvik is to recover his costs on appeal.

21

_____
Rivera, J.

We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.