Filed 8/31/23  Martinez v. Valenzuela CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RUBEN SANTOS MARTINEZ, Plaintiff and Respondent, v. JAVIER AVIEL VALENZUELA, Defendant and Appellant. | B317158 (Los Angeles County Super. Ct. No. 19STCV39214) |

APPEAL from an order of the Superior Court of Los Angeles County.  Rafael A. Ongkeko, Judge.  Affirmed.

McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, Timothy J. Buchanan and Lejf E. Knutson for Defendant and Appellant.

Engstrom, Lipscomb & Lack, David R. Lira, Brittan Cortney and Rachel M. Lannen for Plaintiff and Respondent.

_____

Following a car versus motorcycle accident, Ruben Santos Martinez, the motorcyclist, sued Javier Aviel Valenzuela, the car driver, for negligence.  The jury returned a defense verdict but the trial court, finding the evidence compelled a finding that Valenzuela was negligent in some degree, ordered a new trial.  Valenzuela appeals from that order, contending no substantial evidence supports it and the court relied on incorrect legal principles and failed to consider all the evidence and adequately explain its reasoning.  We disagree, and thus affirm the order.

## BACKGROUND

### A.    The Accident Site

The accident occurred on Valley Boulevard (Valley) in Los Angeles, which runs east and west.

The eastbound and westbound lanes on Valley were divided by a double yellow line, the westbound side having five lanes.  The posted speed limit was 35 miles per hour.

Approaching the accident site from the east (i.e., proceeding westbound on Valley), one would pass an intersection with Alhambra Avenue (Alhambra) on the right, which had two left-turn and two right-turn lanes, then 150 to 200 feet later would reach a driveway on the right coming from Troy's Burgers restaurant.  The accident occurred just off the driveway's apron.  Continuing westbound, one would reach an intersection with Eastern Avenue (Eastern) about 150 to 200 feet after the driveway.

A driver leaving Troy's Burgers who wanted to go east on Valley would first have to navigate five westbound Valley lanes: a right-turn lane, three through lanes (numbered 3, 2, 1), and a left-turn lane.  The driver could then either:  (1) turn right into

2

the fifth westbound lane (Valley's left-turn pocket) and make a U-turn at Eastern, or (2) *cross* the fifth westbound lane and turn left into Valley's eastbound lanes, illegally crossing the double yellow line to do so.

## B.     The Accident

Valenzuela, driving a Honda sedan, chose the first option.

Leaving Troy's Burgers, he paused at the driveway apron, looked left then right (and maybe left again), and entered straight onto Valley intending to cross four lanes, turn right into Valley's left-turn pocket, make a U-turn at Eastern, and proceed east on Valley.

He only made it halfway.

As Valenzuela was leaving the restaurant driveway, Martinez, riding a motorcycle on Alhambra from the south, turned right on a green light onto Valley from Alhambra's leftmost right-turn lane.  He entered Valley's westbound number 2 lane, accelerated, and 150 to 200 feet later collided in the middle of Valley with the front left corner of Valenzuela's south-facing Honda, sustaining serious injuries.

The evidence was equivocal as to who struck whom.

## C.     Trial

Martinez sued Valenzuela for negligence.

At trial, Martinez and Valenzuela presented dueling percipient and expert accounts of the accident.

### 1.     *Investigation by Officer Victor Munoz*

The investigating officer was Los Angeles Police Department Officer Victor Munoz, whose report of the accident was identified as an exhibit but not admitted into evidence.

Munoz was permitted to read portions of the report aloud and testify about them.

When he arrived at the scene, Munoz found Martinez in the roadway injured. He took statements from each driver and wrote in his report what he described at trial as "a paraphrase or synopsis" of what they said.

### a. *Martinez's account at the scene*

According to Munoz's report, Martinez said Valenzuela cut him off while making a left turn onto Valley. Munoz denied that Martinez told him Valenzuela "T-boned" him. "It would be the other way around," Munoz said.

Munoz testified that when he met Martinez again at the hospital, he stated he was driving on Valley at 20–30 miles per hour when Valenzuela's Honda entered the roadway "to make a left-hand turn directly in front of him." Martinez told Munoz that he decelerated to 10–15 miles per hour before colliding with Valenzuela.

### b. *Valenzuela's account at the scene*

According to Munoz's report, Valenzuela told Munoz that he entered onto Valley from Troy's Burgers with the intention of going to the left-turn pocket and making a U-turn at Eastern. Munoz thought this was credible. His report stated, "I observed [Valenzuela's] vehicle . . . was positioned facing slightly right, consistent with [this] statement." Clips and still shots of the scene showed the position of Valenzuela's car angled slightly to the right towards the left-turn pocket on Valley.

Munoz's report stated that Valenzuela said he looked "left and right" before entering Valley and saw Martinez— "coming off Alhambra onto Valley" (i.e., from Valenzuela's left)— too late to

4

react. Valenzuela said Martinez was driving between 60 and 65 miles per hour before he saw Valenzuela, then decelerated to approximately 40 to 45 miles per hour before broadsiding him.

Officer Munoz testified that from the Troy's Burgers driveway there was a clear view of traffic merging from Alhambra onto Valley. He testified that in the collision report he did not note speed as a factor in the crash but would have done so had it been a factor.

### 2. *Plaintiff's Evidence*

#### a. *Martinez*

Martinez testified that before the accident, he was on his motorcycle stopped at a red light at Alhambra and Valley, in the lane farthest from the curb. When the light turned green, he proceeded onto Valley into the middle lane, going "maybe" 20-25 miles per hour when he first saw Valenzuela's vehicle in the roadway, coming at him, "[a]ll of a sudden," "out of nowhere," "like a kamikaze pilot." He braked and moved left to attempt to avoid the collision but was unable to stop.

At his deposition, in a segment read into the record at trial, Martinez had said Valenzuela's car then struck his motorcycle on the right side "like a T-bone." As he testified: "I seen it when it came at me and hit me." He was uncertain if his brakes locked up, and made no mention of skidding before the impact. He tried to avoid the collision by braking and moving to the left into lane 1 but was unable to stop and was in lane 1 when Valenzuela hit him. He went over the hood and landed in the left-hand turn pocket.

Martinez testified that at the hospital he told Officer Munoz that Valenzuela's car was not stopped. Had it been stopped, Martinez would have stopped too.

b. *Plaintiff's expert*

Martinez's expert, Jon Landerville, testified that the accident was caused by Valenzuela crossing Valley in an unsafe manner and failing to see Martinez approaching from the left. Landerville said Valenzuela's Honda accelerated to 15–18 miles per hour as he entered and moved across Valley, and at impact was traveling at 6.9 miles per hour. Martinez was going 35 miles per hour but decelerated to 21.2 miles per hour just before sideswiping off Valenzuela's front bumper. Landerville saw no problem with the acceleration rate of the motorcycle. He opined that Valenzuela's maneuver was unsafe regardless of whether he was turning left or right, and Martinez was "clearly visible" for six to seven seconds before the collision, giving Valenzuela enough time to stop and yield to the motorcycle. Landerville had no reason to disbelieve Valenzuela's deposition testimony in which he stated that he looked left, right and left when exiting the driveway, but opined that he simply missed seeing the motorcycle.

Damage to the wheel cover at the left front wheel of the Valenzuela's Honda, along with damage to the hood, led Landerville to opine that the car was in motion at the time of impact, which occurred very deep into Lane 1, almost into the left-turn pocket. Photos of blood on the roadway showed that Martinez's body came to rest in the left-turn pocket.

### 3. *Defense Evidence*

#### a. *Valenzuela*

For the defense, Valenzuela testified that he exited Troy's Burgers intending to turn right onto Valley and make a U-turn at Eastern to head east towards his home. He stopped on the driveway's apron, looked left down Valley for two to three seconds, looked right, and then looked left again. He could see the general area where Alhambra and Valley merged but the intersection was not entirely visible because "there's a bend in the road at Alhambra, you can only see a certain portion up to where the streetlight is at." Not seeing any vehicles, Valenzuela proceeded toward the left-turn pocket.

As he entered Valley and got as far as the middle of lane 2, Valenzuela heard the exhaust of a motorcycle engine, looked left again, and for the first time saw Martinez merging at a high speed into the center lane of Valley, about 100 feet and two or three seconds away. Valenzuela came to a stop, already angling slightly toward the left-turn pocket. Martinez shifted slightly to his left but struck Valenzuela's stopped car on the front end.

#### b. *Defense expert*

Valenzuela's expert, Harm Jansen, testified that Valenzuela made a proper assessment of the gap in traffic so as to safely pull out from Troy's Burgers. He testified that after Martinez turned from Alhambra onto Valley he accelerated to 39 miles per hour, and Valenzuela had only 3.4 seconds to react. Jansen opined that Martinez lost control and skidded before impacting Valenzuela's stopped vehicle.

Jansen concluded that Valenzuela acted as a reasonable person would in the same scenario, and "the rate at which . . .

7

Martinez accelerated into traffic was the causative factor for the collision." Martinez's failure to anticipate that other road users would not be ready for a fast acceleration into traffic, paired with his inability to control the motorcycle, caused the collision.

### 4. *Verdict*

The jury was asked, "Was . . . Valenzuela negligent in the operation of his vehicle?" By a vote of 9-3, it answered no.

## D. New Trial Ruling

Martinez moved for a new trial on the grounds of (1) irregularity in the proceedings of the jury, (2) jury misconduct, and (3) insufficiency of the evidence to justify the verdict. He argued that Valenzuela negligently violated his right of way when he pulled out of the Troy's Burgers driveway and failed to proceed with reasonable caution.

The court found that the evidence established at least the following:

"1. There is, at most, a 200-foot distance between the [Troy's Burgers] driveway and Alhambra . . . .

"2. Plaintiff made his right turn from Alhambra . . . to westbound Valley . . . on a green signal and accelerated toward what would be the eventual area of impact in the number 1 westbound lane on Valley . . . .

"3. Defendant exited the driveway of Troy's Burgers, intending to turn right onto westbound Valley . . . and enter the left-turn pocket, at least three, if not four, lanes away to the south, and slightly west of the driveway.

"4. Defendant inched forward from the driveway, but states that when he reached the curb, although he looked to his left toward Alhambra . . . , he did not see the motorcycle.

8

But defendant told investigating officer Munoz that he saw the motorcycle turning from Alhambra onto Valley at a high rate of speed.

"5.    Defendant had a clear line of sight as plaintiff would be coming off Alhambra . . . toward westbound Valley . . . .

"6.    Claiming not to see any vehicle, defendant stated he crossed the first two lanes of westbound Valley and was halfway into the next, or number one, lane when he first heard and then saw plaintiff's motorcycle.  Defendant was impeached with his deposition testimony where he said he was 'already in lane 2 . . . ,' not halfway into lane 1, when he heard or noticed the motorcycle. Either way, defendant was unable to clear all . . . traffic lanes of westbound Valley to complete his intended turn when the collision occurred.

"7.    Defendant did not see plaintiff's motorcycle before the collision until it was approximately 100 feet away.  But, at his deposition, defendant testified the motorcycle was '50 to 100 feet away.'  At trial, defendant described and/or marked on exhibit 36–48 and 103 (identical exhibits) the general location where he first saw the motorcycle, an area which he described and/or marked as just south and west of the crosswalk area where plaintiff would begin his right turn onto westbound Valley. At that time, defendant testified plaintiff was already crossing Valley . . . .

"8.    Defendant testified that by the time he saw the motorcycle about 50-100 feet away, depending on which testimony of his we use, all he could do was brake as a collision was inevitable."  (Capitalization & italics omitted.)

The court stated that "[a]fter weighing all of the evidence, the court concludes the jury clearly should have reached a

9

different verdict as to whether or not defendant was negligent." (Capitalization omitted.)

The trial court stated:

"There is sufficient and substantial evidence that, whether defendant was turning right to cross the entire width of westbound Valley to enter the left-turn pocket three lanes away, or, even worse, making an illegal (and admittedly unsafe and difficult) left turn from the driveway across the same lanes and having to be attentive to both west and eastbound [Valley/Alhambra] traffic (possibly 5 to 6 traffic lanes in total), defendant failed to exercise reasonable care by entering westbound Valley and making, or attempting to make, an unsafe turn in violation of plaintiff's right-of-way. He claims he did not see plaintiff's motorcycle before the collision until it was too late, but he also told Munoz and testified that he saw the motorcycle turn from Alhambra onto Valley. That should have been a red flag for any vehicle wanting to cross Valley['s] . . . three lanes (or more to go eastbound). It is undisputed that the motorcycle would have been available to be seen at Alhambra, at least 150–200 feet to defendant's left. As he 'inched' from the driveway and decided to begin his turn and cross the lanes of westbound Valley, defendant saw the motorcycle but began his crossing anyway. Defendant concedes he would not have proceeded forward had he seen the motorcycle before he decided to cross. But, importantly, according to his statement to Munoz, which was read to the jury, he did see the motorcycle 'turn [westbound] on Valley . . . from Alhambra . . . at a high rate of speed.' These circumstances would support a finding of defendant's negligence.

"If defendant maintains he did not see plaintiff when he decided to turn, then defendant simply was not attentive

10

to westbound Valley traffic west of Alhambra.  Such traffic, of course, would have the right-of-way over those exiting the driveway, 150–200 feet away.  Even if defendant looked and saw the motorcycle, he clearly miscalculated the available gap in westbound traffic coming from his left to safely complete either a right or left turn without endangering such traffic.  This gap becomes even more problematic for the turning maneuver defendant intended because defendant has always contended that he saw the motorcycle approaching at a high rate of speed.  While a factfinder might also find plaintiff was partially at fault in some way, there was insufficient evidence to absolve defendant *completely of any negligence* inasmuch as plaintiff's motorcycle was available to be seen.  In fact, the motorcycle was seen, and, as instructed in special instruction [No.] 1, it was 'close enough' to constitute an immediate hazard as defendant made his decision to enter Valley . . . and make whatever turn he was about to make, especially if he intended to cross at least three wide lanes of traffic.  This decision required defendant to 'continue to yield the right-of-way' to plaintiff (see . . . Veh. Code[,] § 21804[, subd.] (a)]) until defendant could cross *all lanes* of westbound Valley 'with reasonable safety.'  He clearly did not do the latter."  (Boldface & capitalization omitted.)

The court stated that although "not essential to this ruling," Valenzuela's testimony about intending to make a right turn rather than a left was not credible, and it was "more likely that [he] was intending to complete a left."

The court granted Martinez's motion for new trial, and Valenzuela appeals.

11

## DISCUSSION

Valenzuela contends the order granting a new trial must be reversed because the court relied on erroneous legal principles and failed to adequately explain its reasoning, and no substantial evidence supports the order.

### A.    Legal Principles

A new trial may be granted only on grounds specified in Code of Civil Procedure section 657, one of them being insufficiency of the evidence to justify the verdict.  (Code Civ. Proc., § 657.)  "A new trial shall not be granted upon the ground of insufficiency of the evidence . . . unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision."  (Code Civ. Proc., § 657.)

An order granting a new trial must identify the grounds relied upon and specify the reasons why the evidence supports those grounds.  (Code Civ. Proc., § 657.)  "Specifications for new trial are sufficient if they make a record sufficiently precise to permit meaningful review.  [Citation.]  Specifications are insufficient if simply couched in the form of conclusions or statements of ultimate fact."  (*Tramell v. McDonnell Douglas Corp.* (1984) 163 Cal.App.3d 157, 170.)

An order granting a new trial based "exclusively upon an erroneous concept of legal principles applicable to the cause" must be reversed.  (*Conner v. Southern Pacific Co.* (1952) 38 Cal.2d 633, 637, see also *McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 94.)

"The standards for reviewing an order granting a new trial are well[-]settled.  After authorizing trial courts to grant a

12

new trial on the ground[ ] of . . . '[i]nsufficiency of the evidence,' section 657 provides: '[O]n appeal from an order granting a new trial upon the ground of the insufficiency of the evidence . . . *such order shall be reversed as to such ground only if there is no substantial basis in the record for . . . such reason*[ ].' . . . Thus, we have held that an order granting a new trial under section 657 'must be sustained on appeal unless the opposing party demonstrates that no reasonable finder of fact could have found for the movant on [the trial court's] theory.' [Citation.] Moreover, '[a]n abuse of discretion cannot be found in cases in which the evidence is in conflict and a verdict for the moving party could have been reached . . . .' [Citation.] In other words, 'the presumption of correctness normally accorded on appeal to the jury's verdict is replaced by a presumption in favor of the [new trial] order.' " (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 411–412 (*Lane*).)

## B. The Trial Court Applied Correct Legal Principles

### 1. *The Court Employed No Improper Presumption*

The trial court's order stated that "[w]hile a factfinder might also find plaintiff was partially at fault in some way, there was insufficient evidence to absolve defendant completely of any negligence." (Capitalization & italics omitted.)

Valenzuela argues this statement in effect presumed that both parties were partially at fault, and therefore shifted the burden to Valenzuela to prove he was not negligent, an incorrect legal principle. We disagree.

The court's statement was based on the evidence, not a presumption. It was undisputed at trial that when Valenzuela

13

exited the driveway at Troy's Burgers, he had a clear view to his left for 150 to 200 feet, and Martinez was in his line of sight. Valenzuela nevertheless proceeded to the middle of Valley before stopping. A reasonable factfinder could conclude from this evidence that Valenzuela was negligent to at least some degree. No presumption was necessary.

### 2. *The Court Did Not Rely on a U-turn Theory*

In its order, the trial court stated, "While not essential to this ruling, the court finds defendant's testimony on a key point not credible. . . . [¶] . . . Although there was no evidence that a U-turn was permitted or prohibited from [the] left-turn pocket . . . [at Valley and Eastern, where Valenzuela stated he intended to make a U-turn], the court does not find defendant's U-turn testimony to be the more credible scenario." (Capitalization omitted.)

Valenzuela argues that because a U-turn *was* permitted at the intersection, the court's order was based on an erroneous legal concept.

We disagree. The court expressly did not rely on this point but merely recited (correctly) the state of the evidence: The propriety of a U-turn at Eastern was not discussed. Whether a U-turn was in fact allowed was irrelevant to both the order and the case because both sides agreed it did not matter whether Valenzuela intended to turn right or left out of the Troy's Burgers driveway—the accident occurred before he could do either.

14

### C.    The Order Was Sufficiently Specific

Valenzuela argues the order granting a new trial was insufficiently specific because it failed to state the relied-upon ground and the reasons supporting it.  We disagree.

"The requirement for stating the grounds and specifying the reasons for each ground is to encourage careful deliberation by the trial court before ruling and to provide a record sufficiently precise to permit meaningful review."  (*Kolar v. County of Los Angeles* (1976) 54 Cal.App.3d 873, 880.)  A "brief descriptive statement" will often suffice.  (*Scala v. Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 368 (*Scala*.)  "It is helpful if the court declares what witnesses it believed, what testimony was to be disregarded or the value of any impeachment.  [Citation.] . . . [Citation.]  The court should briefly identify criticized evidence."  (*Bigboy v. County of San Diego* (1984) 154 Cal.App.3d 397, 404.)

Here, the trial court stated the ground for granting a new trial:  "insufficiency of the evidence to justify the verdict."

The court clearly stated the reason supporting this ground:

"There is sufficient and substantial evidence that, whether defendant was turning right . . . or . . . left . . . , defendant failed to exercise reasonable care by entering westbound Valley and making, or attempting to make, an unsafe turn in violation of plaintiff's right-of-way."  (Capitalization omitted.)

Valenzuela argues the trial court failed to identify the portion of the record that convinced the court Valenzuela was negligent.  We disagree.  After stating the ground for the new trial order and the reason supporting it, the court then described at length the evidence supporting its conclusion:

Valenzuela "claims he did not see plaintiff's motorcycle before the collision until it was too late, but he also told Munoz

15

and testified that he saw the motorcycle turn from Alhambra onto Valley. That should have been a red flag for any vehicle wanting to cross Valley['s] . . . three lanes (or more to go eastbound). It is undisputed that the motorcycle would have been available to be seen at Alhambra, at least 150–200 feet to defendant's left. As he 'inched' from the driveway and decided to begin his turn and cross the lanes of westbound Valley, defendant saw the motorcycle but began his crossing anyway. Defendant concedes he would not have proceeded forward had he seen the motorcycle before he decided to cross. But, importantly, according to his statement to Munoz, which was read to the jury, he did see the motorcycle 'turn [westbound] on Valley . . . from Alhambra . . . at a high rate of speed.' These circumstances would support a finding of defendant's negligence." (Boldface & capitalization omitted.)

Even if Valenzuela did not see Martinez, the court explained, "then defendant simply was not attentive to westbound Valley traffic west of Alhambra. Such traffic, of course, would have the right-of-way over those exiting the driveway, 150–200 feet away. Even if defendant looked and saw the motorcycle, he clearly miscalculated the available gap in westbound traffic coming from his left to safely complete either a right or left turn without endangering such traffic. This gap becomes even more problematic for the turning maneuver defendant intended because defendant has always contended that he saw the motorcycle approaching at a high rate of speed. While a factfinder might also find plaintiff was partially at fault in some way, there was insufficient evidence to absolve defendant completely of any negligence inasmuch as plaintiff's motorcycle was available to be seen. In fact, the

16

motorcycle was seen, and, as instructed in special instruction [No.] 1, it was 'close enough' to constitute an immediate hazard as defendant made his decision to enter Valley . . . and make whatever turn he was about to make, especially if he intended to cross at least three wide lanes of traffic.  This decision required defendant to 'continue to yield the right-of-way' to plaintiff . . . until defendant could cross all lanes of westbound Valley 'with reasonable safety.'  He clearly did not do the latter." (Capitalization & italics omitted.)

The court's citation to the record was more than adequate. (Cf. *Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 646 (*Estes*) ["the trial court 'should not be burdened with giving a comprehensive review of the evidence' "].)

Contrast the trial court's rationale here with the stated reasons in an analogous ruling that our Supreme Court held were insufficient:  "In the case at bar the specification of reasons merely recited that under the court's view of the evidence (1) the defendant was not negligent and (2) the plaintiff was guilty of contributory negligence proximately causing his injuries."  (*Scala, supra*, 3 Cal.3d at p. 364 [conclusory reasons do not suffice].)

We conclude that the trial court's statement of reasons reflected that the court evaluated all the evidence and was sufficiently specific to provide for meaningful appellate review.

Valenzuela argues meaningful review is impossible because the trial court's finding that Valenzuela both saw and did not see Martinez was so ambiguous as to obscure the theory on which the court relied.

We disagree.  The theories are not inconsistent, but alternative:  Valenzuela was negligent whether or not he saw Martinez.  If he saw him, he should have yielded.  If he did not

17

see Martinez, he was inattentive because his line of sight was clear, and Martinez was in it.

### D. The Order Was Supported by Substantial Evidence

Valenzuela argues that even if the trial court's order was procedurally proper, it was unsupported by substantial evidence. We disagree.

It was undisputed that Martinez made a right turn from Alhambra to westbound Valley on a green signal and had the right-of-way. It was undisputed that Valenzuela entered onto Valley and stopped halfway, broadside to oncoming traffic. Officer Munoz testified that Valenzuela told him he saw Martinez turn westbound onto Valley from Alhambra, approximately 150 to 200 feet away. This evidence alone supported the trial court's conclusion that Valenzuela saw Martinez in time to yield but negligently failed to do so.

Even Valenzuela's theory at trial—that he did not see Martinez until immediately before the accident—supported the court's order. Valenzuela described the scene and placed marks on map exhibits showing his clear line of sight to Alhambra. Officer Munoz also testified that from the Troy's Burgers driveway there was a clear view of traffic merging from Alhambra onto Valley. Thus, even if Valenzuela did not see Martinez, the court was justified in concluding he should have.

" 'An abuse of discretion cannot be found in cases in which the evidence is in conflict and a verdict for the moving party could have been reached under the theory expressed in the order for a new trial.' " (*Estes*, *supra*, 51 Cal.App.5th at p. 643, italics omitted.) As our high court observed in *Lane*: "The trial court sits much closer to the evidence than an appellate court.

18

Even the most comprehensive study of a trial court record cannot replace the immediacy of being present at the trial, watching and hearing as the evidence unfolds.  The trial court, therefore, is in the best position to assess the reliability of a jury's verdict and, to this end, the Legislature has granted trial courts broad discretion to order new trials.  The only relevant limitation on this discretion is that the trial court must state its reasons for granting the new trial, and there must be substantial evidence in the record to support those reasons." (*Lane*, *supra*, 22 Cal.4th at p. 412.)

Here, the trial court watched and heard several witnesses describe the accident while interacting with maps and diagrams of the scene.  From this immersion in the evidence, the court sits in a better position than we to assess the factual reliability of the verdict.

We conclude that the court considered all of the record, relied on correct legal principles, and adequately stated its reasons for granting a new trial, and those reasons were supported by substantial evidence.  It was therefore no abuse of discretion to order a new trial.

## DISPOSITION

The order granting a new trial is affirmed.  Respondent is awarded his costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


WEINGART, J.